IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAWRENCE CZARNIONKA, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>THE EPOCH TIMES ASSOCIATION, INC.,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Lawrence Czarnionka, individually and on behalf of all other similarly situated persons ("Plaintiff"), brings this action against The Epoch Times Association, Inc. ("Epoch Times" or "Defendant") for its violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA" or "the Act"). Plaintiff's claims arise from Defendant's practice of knowingly disclosing to a third party, Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), "personally identifiable information" ("PII") about the videos Plaintiff and similarly situated subscribers obtain or request from Defendant's websites and applications (collectively "websites"). Plaintiff's allegations are made on personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters.

**NATURE OF THE CASE**

1. This is a consumer privacy class action against Epoch Times, for knowingly disclosing its digital subscribers' identities and the specific online video materials they obtained or requested from Defendant's website to Facebook, in violation of the VPPA.

2. Epoch Times is "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials," thus bringing it within the

VPPA's definition of "video tape service provider." 18 U.S.C. § 2710(a)(4). Specifically, Epoch Times operates a digital subscription service where subscribers may view news programs, television shows, documentaries, movies, and other audiovisual content.

3. The VPPA prohibits "video tape service providers," such as Epoch Times, from "knowingly disclos[ing]" consumers' PII, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

4. Epoch Times violates the VPPA by disclosing the specific videos its subscribers have requested or obtained to Facebook. Defendant discloses this information to Facebook using the "Facebook Pixel" or "Pixel"—a snippet of programming code Epoch Times chose to install on its websites that sends information to Facebook. In this case, the information shared with Facebook includes the subscriber's Facebook ID ("FID") coupled with the title of the video that the subscriber watched on the Epoch Times website.

5. A subscriber's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. Thus, the FID identifies a person more precisely than a name, as numerous persons may share the same name but each such person's Facebook profile (and associated FID) is unique.

6. Epoch Times discloses the subscriber's FID and viewing content to Facebook together in a single transaction. Because the subscriber's FID uniquely identifies an individual's Facebook account, Facebook—or any other person—can use the FID to quickly and easily locate, access, and view a particular subscriber's corresponding Facebook profile. In simplest

terms, the Pixel installed by Defendant captures and discloses to Facebook what video a specific, identified subscriber viewed on the Epoch Times website.

7.     On behalf of himself and all similarly situated Epoch Times subscribers, Plaintiff seeks an order enjoining Epoch Times from further unauthorized disclosures of subscribers' PII; awarding liquidated damages in the amount of $2,500 per violation, attorneys' fees, and costs; and granting any other preliminary or equitable relief the Court deems appropriate.

## PARTIES

8.     Plaintiff Lawrence Czarnionka is a citizen and resident of the State of Massachusetts.

9.     In the two years before this action was filed, Plaintiff used his Internet-connected device and web-browsing software ("browser") installed on that device to visit and watch video content on Defendant's website.

10.    Defendant, The Epoch Times Association, Inc., is an international newspaper and media company headquartered in New York, New York. Defendant's website includes *theepochtimes.com* and *epoch tv*, which provides a broad selection of video content.

## JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over Epoch Times because it has its principal place of business in New York, New York.

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13.    Venue is appropriate in this Court because this is the District in which Defendant resides.

## COMMON FACTUAL ALLEGATIONS

### A.     Background of the VPPA

14.     With certain exceptions that are inapplicable here, the VPPA prohibits "a video tape service provider," from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1).

15.     The VPPA was passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

16.     While these statements were true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of datamining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Patrick Leahy emphasized that point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

17.      In this case, Defendant chose to deprive Plaintiff and Class members of that right by systematically disclosing their PII to Facebook without their informed, written consent.

---

[1] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century.

**B.      Epoch Times Designed its Website to Disclose Users' PII, Including Video Viewing Activity, to Facebook.**

18.     Epoch Times operates a website in the U.S. accessible from a desktop and mobile device at https://www.theepochtimes.com/.

19.     In programing its website, Epoch Times installed the Facebook Pixel, thus making the knowing choice to track subscribers' PII and send it to Facebook.

20.     Epoch Times allows consumers to become digital subscribers to its streaming-video platform and content through its website. To subscribe, the consumer must provide his or her name, email address, billing address, and credit- or debit-card information.

21.     After completing the subscription process and gaining access to Defendant's videos, Epoch Times discloses to Facebook, through the Facebook Pixel, the FID of the subscriber and the specific video the subscriber viewed.

**C.      How Epoch Times Discloses Digital Subscribers' PII.**

22.     Businesses have the option of installing the Facebook Pixel on their websites. Doing so enables the business to collect information about how users interact with the business's website, such as whether they initiate purchases on the website, what items they look at, and, relevant here, the content the users view on a particular webpage.

23.     The Facebook Pixel is a unique string of code businesses can embed on their websites allowing them to track consumers' actions and report the actions back to Facebook.

24.     The Pixel can follow a consumer to different websites and across the Internet even after clearing of browser history.

5

25. The Pixel allows Facebook to build detailed profiles about a website's users as those users browse the Internet, so that targeted advertisements can be served on them.[2]

26. To take advantage of advertising and information services offered by Facebook, Defendant programmed the Epoch Times website to include a Facebook Pixel.

27. When an Epoch Times subscriber watches videos on Defendant's website, the Pixel installed by Defendant on its own website sends to Facebook certain information about the viewer and what the viewer watched. Specifically, Epoch Times sends to Facebook the video content name, its URL, and the subscriber's FID.

28. An FID is a unique and persistent identifier that Facebook assigns to each of its users. With it, anyone can look up the user's unique Facebook profile. Simply put, with only an FID and the video content name and URL—all which Defendant knowingly provides to Facebook—any ordinary person could learn the identity of the digital subscriber and the specific video or media content she requested on the Epoch Times website.

29. Defendant could easily program its website so that this information is not disclosed to Facebook.

30. At all relevant times, Defendant knew that the Facebook Pixel disclosed PII to Facebook. This is evidenced from, among other things, the functionality of the Pixel, including that the Pixel's sharing of information with Facebook enabled Defendant's website to show targeted advertising to its digital subscribers based on the content those digital subscribers had viewed on the website, including videos.

---

[2] THE MARKUP, *How We Built a Meta Pixel Inspector*. https://themarkup.org/show-your-work/2022/04/28/how-we-built-a-meta-pixel-inspector (last visited June 22, 2022).

31.     As relevant here, Epoch Times disclosed to Facebook the video title and FID in a single transmission, through the Facebook Pixel as depicted below[3]:



*Figure 1*

32.     In this example, Holly June is watching Defendant's video entitled "At Least we Didn't Blame the Jews for the Pandemic Satirist Konstantin Kisin on the Madness of our Times."

33.     The FID is displayed in the "c_user" code. In this example the code is 100083569406140:



*Figure 2*

---

[3] For the purposes of demonstrating in this Complaint Epoch Times's practice of sharing consumers personally identifiable information, an exemplary account for "Holly June" was created and utilized.

34. In this example, the disclosure of the FID is coupled with the title of the video the subscriber watched along with the URL for the video:



*Figure 3*

35. Any person can specifically identify the user viewing the "At Least we Didn't Blame the Jews for the Pandemic Satirist Konstantin Kisin on the Madness of our Times" video by simply entering "facebook.com/100083569406140" into their search bar:



*Figure 4*

36. Upon pressing enter or search, the following page automatically appears:



8

*Figure 5*

37. Epoch Times violates the VPPA by knowingly disclosing subscribers' FIDs, together with their viewing content, to Facebook.

## PLAINTIFF-SPECIFIC ALLEGATIONS

38. Plaintiff Lawrence Czarnionka has been an Epoch Times subscriber and is a Facebook user.

39. Mr. Czarnionka consistently paid Epoch Times a subscription fee during the period of his subscription.

40. Mr. Czarnionka watched video content through his Epoch Times subscription in the two years preceding the filing of this action.

41. During the time Plaintiff had his Epoch Times subscription, he was also a Facebook user. Epoch Times disclosed to Facebook his FID coupled with the title of the videos he watched and the URLs to access those videos.

42. Each time Defendant disclosed his PII to Facebook, it violated his rights under the VPPA.

## CLASS ALLEGATIONS

43. Plaintiff brings this lawsuit under Rules 23(a) and (b) of the Federal Rules of Civil Procedure on his own behalf and on behalf of the following Class:

> All persons in the United States who subscribed to Epoch Times, viewed video content on a website or application operated by Epoch Times, and used Facebook during the time Facebook's Pixel was active on Epoch Times.

44. The "Class Period" is from July 26, 2020, to the present.

45. Excluded from the Class is Defendant, any controlled person of Defendant, as well as the officers and directors of Defendant and the immediate family members of any such

person. Also excluded is any judge who may preside over this cause of action and the immediate family members of any such person. Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

46. **Numerosity**: The Class consists of at least hundreds of individuals, making joinder impractical.

47. **Commonality and Predominance**: Common questions of law and fact exist with regard to the claim and predominate over questions affecting only individual Class members. Questions common to the Class include:

    A.    Whether Epoch Times knowingly disclosed Plaintiff's and Class members' PII to Facebook;

    B.    Whether Epoch Times's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710; and

    C.    Whether Epoch Times should be enjoined from disclosing Plaintiff's and Class members' PII.

48. **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Epoch Times's misconduct—disclosing consumers' PII to Facebook.

49. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy-protection cases. Plaintiff does not have any interests antagonistic to those of the Class.

50. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Epoch

Times to comply with federal law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Epoch Times's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSE OF ACTION
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710

51. Plaintiff incorporates and realleges the above factual allegations by reference.

52. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information concerning any consumer of such provider" to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer[.]" 18 U.S.C. §§ 2710(b)(1) & (2)(B).

53. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" Epoch Times is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

54. As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above,

Plaintiff and Class members are subscribers to Defendant's service of providing video content. Thus, Plaintiff and Class members are "consumers" under this definition.

55. As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

56. Epoch Times knowingly disclosed Plaintiff's and Class members' PII—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

57. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each Class member to Facebook as an individual who viewed Defendant's video content, including the specific video materials watched on Defendant's website. Indeed, anyone with an FID could use it to identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

58. Defendant never obtained from Plaintiff, or any Class member informed, written consent. More specifically, Defendant never obtained from Plaintiff or any Class member informed, written consent in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; Defendant never obtained from Plaintiff or any Class member informed, written consent that, at the election of the consumer, was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and Defendant never provided an opportunity, in a clear and conspicuous manner, for Plaintiff or any Class member to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2)(B).

59. Defendant's disclosures were made knowingly, as it programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and the subscriber's FID when a subscriber watched a video.

60. By disclosing Plaintiff's and Class members' PII, Epoch Times violated Plaintiff's and Class members' statutorily protected right to privacy in their video-watching habits. 18 U.S.C. § 2710(c).

61. As a result of these violations, Epoch Times is liable to Plaintiff and Class members.

62. On behalf of himself and all members of the Class, Plaintiff seeks to enjoin Defendant's disclosures of PII; liquidated damages in the amount of $2,500 per violation; reasonable attorneys' fees and costs; and all other preliminary or equitable relief the Court deems appropriate. 18 U.S.C. § 2710(c)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

i. Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

ii. Enter judgment in favor of Plaintiff and the Class;

iii. Enjoin Defendant's future disclosures of Plaintiff's and Class members' PII;

iv. Award Plaintiff and Class members liquidated damages they are entitled to under the VPPA;

v. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

vi. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

vii. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right.

Dated: July 26, 2022

                      Respectfully submitted,

                      /s/ Joseph Henry (Hank) Bates, III
                      Joseph Henry (Hank) Bates, III
                      Lee Lowther
                      Courtney E. Ross
                      CARNEY BATES & PULLIAM, PLLC
                      519 W. 7th Street
                      Little Rock, AR 72201
                      (501) 312-8500
                      (501) 312-8505
                      hbates@cbplaw.com
                      llowther@cbplaw.com
                      cross@cbplaw.com

                      (to apply for application to appear pro hac vice)