IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAWRENCE CZARNIONKA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE EPOCH TIMES ASSOCIATION, INC.<br><br>Defendant. | Civil Action No.: 1:22-cv-06348-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Epoch Times Association, Inc. ("Defendant") moves for judgment on the pleadings against Lawrence Czarnionka ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(c).

**INTRODUCTION**

Plaintiff's Video Privacy Protection Act ("VPPA") complaint cannot stand on the pleadings because the "complaint itself shows that the defendant [does] not disclose information showing that a person has 'requested or obtained specific video materials or services.'" *Martin v. Meredith Corp.,* 2023 U.S. Dist. LEXIS 27539, *7 (S.D.N.Y. Feb. 17, 2023). The complaint relies on a screenshot of part of a webpage from Defendant's website and Facebook Pixel code underlying activity on that webpage to allege Defendant sends to Facebook personally identifiable information ("PII"): namely, a user's Facebook ID, the name of video content viewed by the user, and the URL for that video content. But Plaintiff's screenshot unequivocally belies this conclusory allegation about user PII, as "PII" is defined by the VPPA.

The screenshot shows Facebook obtains, via Pixel, a "PageView" from Defendant that merely tells Facebook that a user has loaded a webpage and the URL for that webpage (i.e., the internet address of the webpage). The PageView / URL is **not** the name of video content. The

PageView / URL *does not indicate* whether the user has requested or obtained specific video materials on the webpage.  As such, Defendant is not violating the VPPA – it has not disclosed to Facebook PII (i.e., "specific video materials" a user has "requested or obtained").  Said another way, *if Facebook looked at the webpage info it obtained from Defendant, that information did not tell Facebook that the information was "specific" video material requested by a website user.*

## PROCEDURAL BACKGROUND

Plaintiff filed his complaint on July 26, 2022.  (Complaint, ECF No. 1.)  The Complaint alleges a single count: violation of the VPPA, 18 U.S.C. § 2710 *et seq*.  Defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  (Motion to Dismiss ("MTD") ECF No. 17.)  The MTD made four arguments, which the Court phrased as follows:  "(1) Plaintiff fails to plausibly allege that Defendant's disclosures to Facebook [of a Facebook ID] included personally identifiable information ("PII"); (2) Plaintiff fails to plausibly allege that Defendant 'disclosed' his PII; (3) Plaintiff fails to plausibly allege that Defendant 'knowingly' disclosed his PII; and (4) Plaintiff's allegations lack the specificity necessary to determine if the VPPA applies to the 'video content' he consumed."  (MTD Order at 3-4, ECF No. 25; *see also* Mem. in Support at 4-11, ECF No. 18.)  The Court denied the MTD and included a finding that a Facebook ID "represents a particular individual."  (MTD Order at 5, ECF No. 25.)

Defendant then moved for a 28 U.S.C. §1292(b) interlocutory appeal, arguing the Court should have applied the "ordinary person" standard in deciding if Plaintiff had properly pled the disclosure of PII.  (Mem. in Support at 5, ECF No. 28.)  The Court denied this motion, finding an ordinary person could identify an individual through use of a Facebook ID.  (1292(b) Order at 2, ECF No. 31.)  Defendant answered the Complaint on December 16, 2022.  (ECF No. 34.)

The motion to dismiss (and, as a result, the 1292(b) motion) did not argue the information supposedly disclosed by Defendant, beyond the Facebook ID, was ***not*** sufficient to show Plaintiff had "requested or obtained specific video materials or services[.]"  18 U.S.C. § 2710(a)(3). Defendant makes that argument now based on further analysis undertaken with subject matter consultants.

## ALLEGED FACTS[1]

Defendant is a newspaper and media company with a website, *theepochtimes.com,* which includes *epoch tv*, which in turn contains some video content ("Website").  Compl. ¶ 10.  The Website has "subscribers," including Plaintiff.  *Id*. ¶¶ 20, 38-39.

The Website hosts a marketing tool called Facebook Pixel ("Pixel") to "take advantage of advertising and information services offered by Facebook."  Compl. ¶ 26.  Plaintiff cites to an article called THE MARKUP, *How We Built a Meta Pixel Inspector,* to assert "Pixel allows Facebook to build detailed profiles about a website's users as those users browse the internet …."[2]

Defendant installed Pixel on the Website and Facebook received from Pixel the following user information:  Facebook ID, the title of videos watched, "and the URLs to access those videos."  *See* Compl. ¶¶ 21, 41.

To demonstrate how Pixel operated through the Website, the Complaint provides a screenshot of a user's interaction with a webpage on the Website.  Compl. ¶¶ 31-37.  The screenshot shows some (though not all) content on the webpage and data Facebook has obtained via Pixel pertaining to the user's interaction with the Website webpage:

---

[1] For this motion only, Defendant accepts allegations of fact (excluding conclusory, unsupported statements and assertions contradicted by referenced documents) as true.

[2] Compl. ¶ 25 & n.2.  *See* https://themarkup.org/show-your-work/2022/04/28/how-we-built-a-meta-pixel-inspector (last visited April 24, 2023) ("MARKUP article").



Compl. ¶ 31. Plaintiff avers the screenshot user is watching a video entitled: "At Least we Didn't Blame the Jews for the Pandemic Satirist Konstantin Kisin on the Madness of our Times," and that Pixel provided Facebook the user's Facebook ID, the "title of the video … watched," and the "URL for the video." Compl. ¶ 34. In further alleging these facts, Plaintiff excerpts from the screenshot above and highlights text that Plaintiff claims is the name of a video (*id.*):



93855071.1                                          4

Plaintiff concludes Defendant "violates the VPPA by knowingly disclosing subscribers' [Facebook] IDs, together with their viewing content, to Facebook." Compl. ¶ 37.

## STANDARD OF REVIEW

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is decided on the same standard as a Rule 12(b)(6) motion. *Barnett v. CT Light & Power Co.*, 900 F. Supp. 2d 224, 235 (D. Conn. 2012) (citing *Hayden v. Paterson*, 594 F.3d 150, 159 (2d Cir. 2010)).

"To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" (MTD Order at 2-3, ECF No. 25 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009))). "A claim is facially plausible when it pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (*Id.*) "'Where a complaint pleads facts … merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" (*Id.*) "When considering a motion to dismiss …, the Court must 'accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiffs favor.'" (*Id.* (citation omitted).)

Courts are not "'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" (*Id.* (quoting *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011)).) Court consideration "is limited to a 'narrow universe of material,'" to include documents "'incorporated in the complaint by reference, and … matters of which judicial notice may be taken.'" (*Id.* (citations omitted).) A court may consider an unincorporated document when the "'complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.'" *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230 (2d Cir. 2016); *see also Watkins v. Harlem Ctr. for Nursing & Rehabilitation, LLC*, 2021 U.S. Dist. LEXIS 185713, *9 (S.D.N.Y. Sep. 28, 2021) (court can consider documents integral to complaint even when not incorporated).

**ARGUMENT**

I.  **Plaintiff Fails to State a VPPA Claim Because the Complaint Shows Defendant did Not Share with Facebook Information Identifying an Individual as "having requested or obtained specific video materials or services" from Defendant**

There can be no violation of the VPPA without the disclosure of PII, and under the VPPA, PII is defined as (1) information that (2) identifies a person, as (3) having "***requested or obtained specific video materials*** from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). Two months ago, in *Martin v. Meredith Corp.*, Judge Cote held that when webpage information containing video and non-video content is shared with Facebook, the disclosure of the "name of the webpage does not indicate that a website visitor requested or obtained specific video materials on that webpage." 2023 U.S. Dist. LEXIS 27539, *7 (S.D.N.Y. Feb. 17, 2023).

In *Martin,* the plaintiff claimed the defendant's website, People.com, "causes the identity of [a People.com website] viewer and the titles of the videos viewed [on People.com by the viewer] to be shared with Facebook." *Id.* at *9. On a more granular level, the *Martin* complaint alleged People.com used Facebook Pixel to send to Facebook the following information when a People.com user visited a webpage: (1) the user's Facebook ID, and (2) the name of the webpage (i.e., URL) the user visited on People.com. *Id.* at *7-8. Some of the People.com webpages contained video as well as other content (e.g., articles). In assessing these facts, Judge Cote found the information disclosed to Facebook:

> **leaves off essential information for a VPPA claim, including** at least: (1) whether the webpage contains a video; (2) if so, the name of the "specific video materials" on the page; (3) **whether there are multiple videos on the page and, if so, which "specific video materials" were requested** or obtained by the website visitor; and **(4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article** on the webpage. Indeed, from the information disclosed to Facebook by People.com, it would not even be clear if the person associated with the Facebook ID is a consumer of video media.

*Id.* (emphasis added). To illustrate the flaws with plaintiff's PII contentions, Judge Cote noted instances in the *Martin* complaint where Facebook Pixel sent the name of webpages containing video and other content to Facebook. The names of the videos, however, were different than the names of the webpage. *See, e.g., id.* at *8-9 (webpage title sent: "Ryan Reynolds Hilariously Trolls Wife Blake Lively on Her Birthday," but video on webpage titled: "Ryan Reynolds on How Blake Lively Has Made Him 'The Father of My Dreams.'"). Accordingly, the court concluded (*id.* at *10-11 (emphasis added)):

> **even for webpages including a video**, sending the URL does not identify a person as having requested or obtained the video on that page **since the person may instead have merely reviewed an article on the page or opened the page and done nothing more.**

Here, the Complaint suffers from the same pleading defects identified in *Martin*. While Plaintiff alleges in conclusory fashion Defendant shared with Facebook via Pixel the title of videos watched by users (Compl. ¶¶ 31, 34), the screenshot Plaintiff relies on for that conclusion (*see id.*) presents contradictory facts that do not, and cannot, support Plaintiff's VPPA claim.

First, the screenshot shows the website information obtained by Facebook via Pixel consists of a "PageView" (highlighted in blue with underlining of the URL):

```
Headers  Payload  Preview  Response  Initiator  Timing  Cookies

General
Request URL: https://www.facebook.com/tr/?id=3048380072079601&ev=PageView&dl=https%3A%2F%2Fwww.theepochtimes.com%2Fat-least-we-didnt-blame-the-jews
-for-the-pandemic-satirist-konstantin-kisin-on-the-madness-of-our-times_4617701.html&rl=https%3A%2F%2Fwww.theepochtimes.com%2Fc-american-thought-l
eaders&if=false&ts=1658845229989&sw=1856&sh=886&v=2.9.66&r=stable&ec=0&o=30&fbp=fb.1.1658844818324.1770074542&it=1658845229942&coo=false&rqm=GET
Request Method: GET
Status Code: ● 200
Remote Address: 157.240.229.35:443
```

The "PageView" – a standard Pixel event – tells the entity obtaining information (i.e., Facebook), "that a person landed on the webpage." *See* MARKUP article (cited in the Complaint). For Facebook to know more about the person's interaction with Defendant's webpage (including if a video was viewed), specific event parameters – a custom Pixel event – would have had to have been added to Pixel. *See id.* For instance, a custom Pixel event can be used to track and convey, inter alia, a person's video viewing activity on a webpage.[3] The Complaint does not allege Defendant used a custom Pixel event (nor could the Complaint truthfully so aver since the Pixel on Defendant's website was coded only for "PageView" events). *Cf. Martin* at *10-11 (plaintiff acknowledged the Facebook Pixel used did not include specific events to track user webpage activity).

Second, the screenshot, as relevant here, does **not** show the name of the video watched but rather the name of the webpage visited (i.e., the URL). The video depicted in Plaintiff's screenshot has a different name than the URL conveyed by Pixel: the video name, as it appears on the webpage, is "THE TYRANNY *of* UTOPIA". In contrast, the webpage URL is named: "https://www.theepochtimes.com/at-least-we-didnt-blame-the-jews-for-the-pandemic-satirist-konstantin-kisin-on-the-madness-of-our-times_4617701.html". Below is a screenshot showing the URL and named video for the relevant webpage.

---

[3] *See id.* (MARKUP article observing custom events include "how far down a page a user has scrolled … if a user viewed the video on the page, and if a user clicked on a certain part of the page").



*See also* Wood Decl. Ex. A.[4]

Third, Plaintiff's screenshot manipulates the webpage to suggest that only video content resides there. However, the webpage contains a host of other content: (1) an article/interview transcript with social media links, "The Self-Destructive Madness of Our Times: Soviet-Born Satirist Konstantin Kisin," (2) several other videos accessible on the webpage, for example, "Pandemic of Cowardice," and (3) comments by webpage visitors. *See* Wood Decl. Ex. A. For

---

[4] The Court can consider the webpage because it is integral to Plaintiff's VPPA allegations. *See Martin* at *8 & n.3 ("The webpages discussed here are appropriately considered … because they are incorporated in and integral to the complaint. The complaint includes a screenshot of one webpage and includes the URL of the other page. Further, the complaint relies on one page as … illustrating how Facebook Pixel sends information to Facebook.").

example, this is what Facebook would have seen, in part, if it had visited the webpage based on the "PageView" information provided via Pixel and then clicked on the article/transcript (*id.*):



The provision of a URL for such mixed use pages, even if provided with a Facebook ID, does not identify for Facebook a person as "having requested or obtained the video on that page since the person may instead have merely reviewed an article on the page or opened the page and done nothing more." *Martin* at *10-11. There is nothing in Plaintiff's screenshot undermining this conclusion – the screenshot does not show (nor can it) that Facebook received information via

Pixel showing a user as having requested or obtained from Defendant's website specific video or the name of any such video.

Plaintiff's unsupported and conclusory allegations that Defendant transmitted Website user video activity to Facebook cannot stand in the face of the specific facts expressed in Plaintiff's screenshot, which squarely contradict contentions of PII conveyance. *See Martin* at 10 (citing *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,* 747 F.3d 145, 151-52 (2d Cir. 2014)); *see also Faber,* 648 F.3d at 104 (courts do not have to accept bare, legal conclusions). Accordingly, the Complaint fails to allege facts sufficient to reasonably infer a person requested or obtained specific video materials from Defendant's webpage.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion pursuant to Federal Rule of Civil Procedure 12(c).

Respectfully submitted April 27, 2023.

By: */s/ Bryan P. Sugar*

Brian Pete, Esq.
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
77 Water Street, Suite 2100
New York, New York 10005
Tel.: 212.232.1363
Fax: 212.232.1399
brian.pete@lewisbrisbois.com

Bryan P. Sugar, Esq.
Illinois Bar No. 6276016 – *Admitted Pro Hac Vice*
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, IL 60661
Tel.: 312.345.1718
Fax: 312.345.1778

Christopher H. Wood
Colorado Bar No. 50717 – *Admitted Pro Hac Vice*
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
1700 Lincoln Street, Suite 4000
Denver, Colorado 80603
Tel.: 303.861.7760
Fax: 303.861.7767
Christopher.Wood@lewisbrisbois.com

*Counsel for Defendant*
*The Epoch Times Association, Inc.*

## **CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure on April 27, 2023, *via CM/ECF*, on counsel of record.

                                           */s/ Bryan P. Sugar*
                                           Bryan P. Sugar