**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LAWRENCE CZARNIONKA, on behalf of themselves and all others similarly situation,<br><br>            Plaintiff,<br><br>v.<br><br>EPOCH TIMES ASSOCIATION, INC.<br><br>            Defendant. | Case No. 1:22-cv-06348-AKH<br><br>Judge Alvin K. Hellerstein |

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION FOR
<u>ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

CASE SUMMARY ............................................................................................................. 5

SUMMARY OF SETTLEMENT ....................................................................................... 5

    A.     Settlement Class ....................................................................................... 5

    B.     Epoch Times Agreed to, and Implemented, Significant Remedial
            Measures. ................................................................................................. 6

    C.     Epoch Times Agreed to Significant Injunctive Relief. ............................ 6

    D.     The Settlement Release Does Not Release Settlement Class Members'
            Damages Claims. ...................................................................................... 6

    E.     The Proposed Notice Program Was Calculated to Afford Ample Notice. ............ 7

ARGUMENT ...................................................................................................................... 8

    A.     Legal Standards ........................................................................................ 8

    B.     The *Goldberger* Factors Support Class Counsel's Requested Fee Award. ......... 10

           1.     First *Goldberger* Factor: Class Counsel's Time and Labor ..................... 10

           2.     Second *Goldberger* Factor: The Magnitude and Complexity of the
                 Litigation ................................................................................... 15

    C.     Third *Goldberger* Factor: The Risks of the Litigation ......................... 17

    D.     Fourth *Goldberger* Factor: The Quality of Representation ................... 18

    E.     Fifth *Goldberger* Factor: The Requested Fee in Relation to the Settlement ......... 19

    F.     Sixth *Goldberger* Factor: Public Policy Considerations Favor the
            Requested Fee Award. ............................................................................. 21

    G.     The Absence of Settlement Class Member Objections to the Fee Request
            Further Support It Is Reasonable. ........................................................... 21

    H.     Class Counsel's Requested Litigation Costs Are Reasonable and Should
            Be Approved. ........................................................................................... 22

    I.      The Requested Service Award Is Reasonable and Should Be Approved. ........... 23

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Baker v. Saint-Gobain Performance Plastics Corp.*,
   No. 116CV00917LEKDJS, 2022 WL 1025185 (N.D.N.Y. Feb. 4, 2022) ............................. 23

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 477 (S.D.N.Y 2013). ......................................................................... 21, 22, 23, 24

*Blum v. Stenson*,
   465 U.S. n.11 (1984) ...................................................................................................... 13

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ......................................................................................................... 8

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 7, 2011)................................................................... 16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................................................ 17

*Copley v. Bactolac Pharm., Inc.*,
   No. 2:18-CV-00575-FB-PK, 2023 WL 4490286  (E.D.N.Y. May 23, 2023).......................... 22

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ....................................................................................................... 21

*Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*,
   270 F. Supp. 3d 593 (E.D.N.Y. 2017)............................................................................ 13

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) .................................................................................... 24

*Ebbert v. Nassau Cty.*,
   2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ........................................................ 16

*Fir Tree Partners*,
   No. 22MC2795NGGRML, 2023 WL 7130666 (E.D.N.Y. Oct. 30, 2023)............................. 13

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. 2015) ..................................................................... 17, 18

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................. 18, 21

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................... 16, 18

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................................ 9, 17

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ......................................................... 22

*Hensley v. Eckerhart*,
461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ................................................ 9

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 15

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
20-CV-5917 (TAM), 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ............................... 20

*In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995) ................................................................................. 9

*In re GSE Bonds Antitrust Litig.*,
No. 19 CV 1704, 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ................................. 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) .................................................................... 22

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................. 17, 18

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................. 20

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) .............................................. 9

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999) ..................................................................... 21

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................................... 21

*Jermyn* v. *Best Buy Stores, L.P.*,
2012 WL 2505644 (S.D.N.Y. June 27, 2012) ............................................... 8, 9, 19, 21

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
No. 517CV359LEKATB, 2023 WL 3251421 (N.D.N.Y. May 3, 2023) .......................... 24

*Massiah v. MetroPlus Health Plan, Inc.*,
2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ......................................................... 23

*McBean v. City of New York,*
  233 F.R.D. 377 (S.D.N.Y.2006) ....................................................... 9

*Millea v. Metro-N. R. Co.,*
  658 F.3d 154 (2d Cir. 2011) ............................................................ 19

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC,*
  No. 16 CV 8103, 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) ............ 14

*N.G.B. v. New York City Dep't of Educ.,*
  No. 21-CV-11211 (LJL), 2023 WL 2711753 (S.D.N.Y. Mar. 30, 2023) ............ 19

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,*
  2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ..................................... 14

*Pearlstein v. BlackBerry Ltd.,*
  No. 13 CV 7060, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)............ 13

*Reyes v. Altamarea Group LLC,*
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .......................... 23

*Simmons v. N.Y.C. Transit Auth.,*
  575 F.3d 170 (2d Cir. 2009)............................................................ 13

*TAO AN et al., Plaintiffs-Counterclaim-Defendants, v. LUC A. DESPINS & PAUL HASTINGS
  LLP, Defendants-Counter-Claimants. Additional Party Names: Li,*
  No. 22CV10062VECJW, 2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024)............ 13

*Themis Cap. v. Democratic Republic of Congo,*
  No. 09 CV 1652, 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014)............. 14

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Cap. Markets,*
  No. 12 CV 9412, 2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016)............. 14

*Velez v. Novartis Pharm. Corp.,*
  04 Civ. 9194(CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......... 20

*Vista Outdoor, Inc. v. Reeves Family Tr.,*
  2018 WL 3104631 (S.D.N.Y. May 24, 2018)..................................... 14

*Willix v. Healthfirst, Inc.,*
  No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)......... 17

## STATUTES

18 U.S.C. § 2710......................................................................................... 1

18 U.S.C. § 2710(c)(2)(C) ..................................................................... 8, 22

18 U.S. Code § 2710(c)(3) .................................................................................... 5

28 U.S.C. Sec. 1292(b) ...................................................................................... 11

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 11

Fed. R. Civ. P. 23(b)(ii) .................................................................................... 7, 8

Fed. R. Civ. P. 23(h) ............................................................................................ 8

Plaintiff, Lawrence Czarnionka ("Plaintiff") submits this memorandum of law in support of his Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

## INTRODUCTION

Plaintiff brought this action alleging Defendant, Epoch Times Association, Inc. ("Epoch Times" or "Defendant") violated his and other similarly situated individuals' rights under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), by disclosing his personally identifiable information to Meta Platforms, Inc. ("Meta," f/k/a Facebook Inc.). More specifically, Plaintiff alleges that Epoch Times voluntarily installed the Meta tracking Pixel on its websites and configured the Pixel to disclose to Meta the Facebook ID and the video content he and other Epoch Times subscribers requested or obtained. On July 26, 2022, Plaintiff filed a putative class action complaint against Epoch Times in this Court alleging violations of the VPPA. *See* ECF No. 1 & 75 (Joint Declaration in Support of Preliminary Approval or "MPA Dec.") ¶ 6.[1] The material allegations of the complaint center on Defendant's alleged disclosure of its subscribers' personally identifiable information, as defined under the VPPA, to Meta without consent via the Pixel, a business advertising and analytical tool offered by Meta, that Epoch Times chose to embed on its websites. *Id.*

On July 6, 2023, the Parties attended an all-day mediation with Judge Frank Maas. *Id.*, ¶ 18. This mediation resulted in a settlement in principle. *Id.* The Parties subsequently executed the Settlement Agreement (ECF 75-1) and amended the Settlement Agreement pursuant to the Court's request and submitted it to the Court for preliminary approval. *See* ECF No. 86, Ex. A ("Am.

---

[1] One week before Plaintiff filed this action, a similar putative class case was filed against Epoch Times in the United States District Court for the Southern District for Ohio. *See Roberts et al. v. The Epoch Times Association, Inc.*, 2:22-cv-02862-MHW-CMV. The parties in that action briefed Epoch Times's motion to dismiss (ECF Nos. 5, 11, 17), and thereafter the plaintiff voluntarily dismissed the action (*see* ECF No. 20). Plaintiff's counsel in the *Roberts* Action subsequently appeared in this case. ECF Nos. 41, 43 & 46.

Settlement Agreement"). This Court granted preliminary approval on January 22, 2024. *See* ECF No. 91.

Through this litigation and the Settlement Agreement,[2] with the Court's final approval, Plaintiff has remedied all the privacy-invasive practices alleged in this Action. *First*, Epoch Times has removed the Pixel from any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that website webpage thus ending the core conduct Plaintiff challenges in this action. ECF No. 88.[3] *Second*, Epoch Times implemented and completed a process to ensure it does not possess any Settlement Class Member's "personally identifiable information," as defined in the VPPA, generated by the Pixel. *Third*, Epoch Times has agreed to an injunction restraining it from re-installing and operating the Pixel on any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained, thus ensuring Epoch Times cannot resume the conduct challenged in this action. Importantly, Plaintiff secured this relief without releasing any Settlement Class Member's claim for damages or other monetary relief.

Plaintiff agreed to settle this lawsuit without a damages component because, as detailed in Plaintiff's Unopposed Motion and Memorandum of Law In Support of Preliminary Approval of Class Action Settlement (ECF No. 74), Epoch Times has no insurance coverage for the claims asserted in this Action and its finances do not permit a class-wide monetary settlement, much less

---

[2] Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement.
[3] In December 2023, Mr. Serge Egelman, the independent expert certified by this Court pursuant to Paragraph 2.1 of the Amended Settlement Agreement, "conducted an independent analysis and determined that data is not being transmitted between the relevant Epoch Times webpages and Meta, which is consistent with Epoch Times removing all Pixels embedded in any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that website webpage." ECF No. 88.

a class-wide judgment. Despite these obstacles, the Settlement Agreement fully redresses the alleged privacy violations at issue in this litigation, ensures Epoch Times cannot resume the challenged conduct without obtaining Court approval to do so, and leaves Settlement Class Members' damages claims unreleased and unimpaired. Class Counsel strongly believes that the result reached in the Settlement is as good as, if not better than, any result that could have been achieved if they were to prevail at trial. Settlement at this stage alleviates years of potential harm to Settlement Class Members and others that would occur if Epoch Times were to continue the conduct alleged in the complaint during a drawn out litigation and appeals process. Counsel Decl., ¶ 34.

Pursuant to the Settlement Agreement and the Court's inherent authority, Class Counsel respectfully submit this Motion for Award of Attorneys' Fees, Expenses, and Service Awards ("Fee Application") and ask that the Court award them $695,624.40 for a portion of their full attorneys' fees and $34,375.60 in reimbursement of litigation expenses.[4] The fee request is supported by a lodestar analysis, as Class Counsel has accumulated a combined lodestar of $994,428.75 to date (rendering the requested fee award a negative multiplier of approximately .70 on Class Counsel's lodestar), with additional work yet to be performed to bring the Settlement through final approval. As detailed more fully herein, the factual and legal complexity of these

---

[4] Class Counsel could reasonably request higher fees than these amounts because, as discussed below, courts in this district and the Second Circuit commonly award fees greater than counsel's lodestar, in contrast to the negative multiplier of 0.70 requested here.  However, Class Counsel's fee request is constrained by the parties' separately negotiated agreement on fees and expenses, which limits any fee and expense request to $730,000 in total, even if—like here—Class Counsel's lodestar exceeds this payment cap. Settlement Agreement, ¶ 7.1. Importantly, the Parties did not address the issue of attorneys' fees and expenses until after they had reached an agreement in principle with respect to the substantive terms of the Settlement, including the proposed injunctive relief, the recognition of remedial measures. And, the Settlement Agreement is in no way contingent upon the Court's award of attorneys' fees and costs. MPA Dec., ¶ 72.

claims and the vigorous defense required the time and resources that Class Counsel invested. The work performed advancing the claims of the Settlement Class Members – on a fully contingent basis – carried significant risk, and Class Counsel forwent other opportunities and dedicated themselves to this case for nearly two years of hard-fought litigation and arm's-length settlement negotiations.

In addition, Class Counsel request that the Court approve a modest $2500 service award for Plaintiff. This request is fully justified by the law due to the work performed by Plaintiff in connection with stepping forward publicly to bring this lawsuit on behalf of all others similarly situated, and his active and dedicated involvement in all aspects of the case, including, among other things, maintaining close contact with counsel to monitor the progress of the litigation, providing documents, reviewing discovery requests, and participating in the settlement process. Plaintiff put his name and reputation on the line for the sake of the Class, and settlement would not have been possible without his efforts. The amount requested is consistent with Service Awards approved in other data privacy class action settlements, including in this district.

This Memorandum is supported by the Declaration of Class Counsel in support of Plaintiff's' Motion for Award of Attorneys' Fees, Expenses, and Service Award ("Counsel Decl."), and the Declaration of Hank Bates in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Award ("Bates Decl."), the Declaration of Douglas Cuthbertson in Support of Plaintiff's Motion for Attorneys' Fees, Expenses and Service Award ("Cuthbertson Decl."), the Declaration of Adam Schwartzbaum in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award ("Schwartzbaum Decl.") and the Declaration of Andrew Shamis in Support of Plaintiff's Motion for Fees, Costs, and Service Award ("Shamis Decl.") attached thereto.

## CASE SUMMARY

For the purposes of brevity and efficiency, Plaintiff incorporates the case summary and procedural background outlined above, and in Plaintiff's Unopposed Motion and Memorandum of Law in Support of Preliminary Approval of Class Action Settlement (ECF 74).

## SUMMARY OF SETTLEMENT

The Settlement requires Epoch Times to do the following: (1) undertake the remedial measures described below; (2) be bound by the injunctive relief described below; (3) pay all the costs of the class notice and administration; (4) pay a Service Award to Plaintiff approved by the Court of no more than $2,500.00; and (5) pay attorneys' fees and expenses approved by the Court not to exceed a total of $730,000.00.

### A.      Settlement Class

The "Settlement Class" is defined as:

> All individuals residing in the United States who were Facebook account holders and subscribers to Defendant's digital services during the Class Period and who requested or obtained any videos on any Epoch Times website while an active Facebook account holder during the Class Period.

ECF No 86[5] (Am. Settlement Agreement), ¶ 1.19. The "Class Period" is defined as "the period from July 26, 2020,[6] to and through the date of Preliminary Approval." *Id.*, ¶ 1.3

---

[5] The operative Settlement Agreement in this matter is the Amended Settlement Agreement filed with this Court on January 9, 2024, following a November 30, 2023 conference with the Court regarding the proposed Settlement Agreement filed with Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 74, 75, 75-1-75-6) on September 11, 2023. Following the Conference the Parties engaged in additional settlement discussions to incorporate certain changes to the Agreement suggested by the Court, including setting a deadline of 15 days after the Effective Date for Epoch Times to take certain injunctive actions pursuant to the Settlement Agreement, and utilizing a court appointed independent expert to verify that the Pixels were removed from Epoch Times' website pursuant to the Settlement Agreement.

[6] July 26, 2020 is two years before this action was filed. ECF No. 1. The VPPA has a two-year statute of limitations period. 18 U.S. Code § 2710(c)(3).

**B.      Epoch Times Agreed to, and Implemented, Significant Remedial Measures.**

Pursuant to the Settlement, Epoch Times agreed to (i) remove all Pixels embedded in any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that webpage, and (ii) implement and complete a process to ensure Epoch Times does not possess "personally identifiable information" (as that term is defined in the VPPA) of Settlement Class Members generated by the Pixel. *Id.*, ¶ 2.1. These remedial measures have already been implemented as confirmed by representations and warranties Epoch Times makes in the Settlement Agreement and the forensic analysis of Epoch Times websites conducted by Serge Egelman, the independent expert certified by this Court. *Id.,* ¶¶ 5.1.1–5.1.3

**C.      Epoch Times Agreed to Significant Injunctive Relief.**

Epoch Times shall not resume operation of the Pixel on any webpage of its websites accessible in the United States that include video content and a URL that identifies the specific video requested or obtained from that webpage. *Id.*, ¶ 3.1.1. Plaintiff may seek from the Court an injunction to enforce the terms of this Agreement, including Epoch Times's representations and warranties stated in paragraph 5.1 and its subparts. *Id.*, ¶ 3.1.2. Notwithstanding the above, Epoch Times may seek relief from this injunction upon amendment or repeal of the VPPA or upon implementation of a VPPA-compliant consumer consent form. *Id*.

**D.      The Settlement Release Does Not Release Settlement Class Members' Damages Claims.**

In exchange for undertaking the above described relief, Epoch Times will receive a full release of any and all non-damages claims that have been asserted in the Action, and any claim, liability, right, demand, suit, matter, obligation, action, or causes of action, of every kind and description, that the Releasing Parties have or could have presented or asserted against Epoch

Times arising out of or reasonably relating to the operative factual predicate alleged in or otherwise described by Plaintiff's complaint in the Action. *Id.* ¶ 1.15.

Importantly, however, because this is a settlement under Rule 23(b)(2), the Released Claims expressly "**do not include claims for damages or other monetary relief**"[7] and "do not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement." *Id.* (emphasis added).

### E.     The Proposed Notice Program Was Calculated to Afford Ample Notice.

While class notice is not mandatory for injunctive relief settlements under Rule 23(b)(2), the Amended Settlement Agreement outlines a robust online notice campaign and a settlement website. The Court approved Kroll Settlement Administration ("Kroll") as Notice Administrator. Kroll has ample experience in class action administration. *See* MPA Dec. at Ex. 2, ¶¶, 7-12. As Notice Administrator, Kroll has been responsible for effectuating the Notice Program (described below) consistent with the terms of the Settlement Agreement, as approved by the Court. *Id.*, Ex. 1 ¶ 8.2; *Id.*, Ex. 2 ¶¶, 14-24.

The Notice Program publicized notice via fair, well-crafted banner ads to direct attention to the Settlement Website and reach Settlement Class Members on Epoch Times websites accessible in the United States (including on theepochtimes.com) as well as social media and apps where Settlement Class Members are likely to visit. *Id.* ¶ 9.3; *id.,* Ex. 2 ¶¶, 14-24. The Settlement Website (i.e., www.EpochTimesVPPASettlement.com) includes the following information: (i) stand-alone descriptions of the injunctive relief and remedial measures; (ii) a summary of the Action and the Settlement terms; (iii) a "Contact Us" page with the Notice Administrator's contact

---

[7] For emphasis, this phrase is bolded and underlined in the Amended Settlement Agreement itself, and as posted on the Settlement Agreement website:
https://www.epochtimesvppasettlement.com/home/8730/DocumentHandler?docPath=/Documents/2024_1_9_D_Cuthbertson_Letter_to_Court_re_Amended_Settlement_Agreement_docket_86_.pdf.

information; (iv) the Amended Settlement Agreement, motions for approval and for attorneys' fees, and all other important documents in the case; (v) important case dates and deadlines, including the objection deadline; (vi) a summary of Settlement Class Members' rights, including how to object to the Settlement; and (vii) the date, time, and location of the Final Approval hearing. *Id.*, ¶ 9.2; *see also* Ex. 2 ¶¶, 14-24. In addition, the Notice Program establishes a toll-free telephone line with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week. *Id.*, ¶ 9.3; Ex. 2 ¶, 23.

Epoch Times has the sole responsibility to pay for and fund the Notice Program, including all fees and expenses of the Notice Administrator. *Id.*, ¶ 9.5.

## ARGUMENT

### A.    Legal Standards

It is well-established that Class Counsel in a successful class action lawsuit may petition the Court for compensation relating to any benefits to the Class that result from the attorneys' efforts. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). Rule 23(h) of the Federal Rule of Civil Procedure expressly states that, in a certified class action such as this one, the Court may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). In addition, the VPPA expressly provides that this Court may award "reasonable attorneys' fees and costs reasonably incurred" in bringing a civil action such as this. 18 U.S.C. § 2710(c)(2)(C).

This is a Rule 23(b)(ii) class action settlement with injunctive relief and no common fund, where any attorneys' fees and costs awarded by this Court will be paid by the defendant Epoch Times pursuant to the Amended Settlement Agreement. "The attorneys' fees in this case will not be awarded from a common fund created for the class as a whole." *Jermyn* v. *Best Buy Stores, L.P.*

2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012). Thus, regardless of the size of the fee award, it does not reduce or alter the injunctive-relief benefits to the Settlement Class described herein. Moreover, the cap on Class Counsel's fee request was negotiated only *after* agreement had been reached on the substantive terms of the Settlement benefiting the Settlement Class and in arm's-length negotiations mediated by Judge Maas. MPA Dec., ¶ 72.  "Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished." *Jermyn* v. *Best Buy Stores, L.P.* 2012 WL 2505644, at *9 (*quoting In re Sony SXRD Rear Projection TV Class Action Litig.,* 2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008).  And in such cases, "the Court's fiduciary role in overseeing the award is greatly reduced." *McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y.2006). Additionally, "[t]he negotiation of fee agreements is generally encouraged." *In re Sony SXRD Rear Projection TV Class Action Litig.,* 2008 WL 1956297 at *15 (S.D.N.Y. May 1, 2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424,437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.")).  "Nevertheless, a court must still 'assess the reasonableness of the fee award, particularly because practical realities suggest that generally 'a defendant is interested only in disposing of the total claim asserted against it,' and not in 'the allocation between the class payment and the attorneys' fees.'" *Id* (quoting *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 819-820 (3rd Cir. 1995)).

In the Second Circuit, the reasonableness of a fee request is analyzed using the six factors set out in *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 507 (2d Cir. 2000)): "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

9

**B.** **The *Goldberger* Factors Support Class Counsel's Requested Fee Award.**

As set forth below, each of the *Goldberger* factors supports the reasonableness of Epoch Times paying attorneys' fees of $695,624.40, reflecting a negative multiplier of 0.70. Class Counsel secured an excellent result for the Settlement Class. Specifically, Epoch Times agreed to (i) remove all Pixels embedded in any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that webpage, and (ii) implement and complete a process to ensure Epoch Times does not possess "personally identifiable information" (as that term is defined in the VPPA) of Settlement Class Members generated by the Pixel. ECF No 86 (Am. Settlement Agreement), ¶ 2.1. Epoch Times shall not resume operation of the Pixel on any webpage of its websites accessible in the United States that include video content and a URL that identifies the specific video requested or obtained from that webpage. *Id.*, ¶ 3.1.1. Further, Class Counsel has preserved the right of Settlement Class Members to recover any damages suffered as a result of the Released Claims. *Id.*, ¶ 1.15.

**1.** **First *Goldberger* Factor: Class Counsel's Time and Labor**

Class Counsel seek a fee award that is significantly less than the actual lodestar of the time and labor they have expended in successfully litigating this action. To date, Plaintiff's Counsel have devoted a total of 1,307.22 hours in this case, for a total lodestar of $994,428.75.[8] *See* Counsel Decl., ¶¶ 21-23, Bates Decl. ¶ 7, Cuthbertson Decl. ¶ 7, Schwartzbaum Decl. ¶ 10, Shamis Decl. ¶ 7. Class Counsel has engaged in nearly two years of hard-fought litigation and arm's length negotiations relating to this matter. *See* Counsel Decl., ¶¶ 2-18. In addition to securing significant injunctive relief and remedial measures on behalf of the Settlement Class in spite of Defendant's

---

[8] This total lodestar does not include the time spent related to this motion.

precarious financial position, Class Counsel's work on this matter included: successfully opposing Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), successfully opposing Defendant's motion to certify a portion of the court's order on that motion to dismiss for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b), opposing Defendant's motion for judgment on the pleadings, engaging in significant first-party and third-party discovery including participating in several meet and confers with Epoch Times and with Meta concerning their respective discovery and subpoena responses, serving a Rule 30(b)(6) deposition notice on Epoch Times and preparing to take that deposition, and responding to Epoch Times's discovery served on Plaintiff, which required working with consultants to forensically image Plaintiff's computer. MPA Decl. ¶¶ 5-29.

This case was aggressively defended by competent counsel. It is because of Class Counsels' significant experience litigating data privacy matters that they were able to efficiently prosecute their case and defeat Defendant's motions, keeping their lodestar request low in spite of the aggressive defense presented, and even still presenting this fee request for a negative lodestar multiplier. Had Counsel not had the benefit of combined decades of experience, they would have needed to expend significantly more time and money apprising themselves of relevant law to properly respond to the motions put forth by Defendant, investigating Defendant's financial position, and properly applying that knowledge to reach the Settlement Agreement achieved in this matter.

Class Counsel fought hard for the Settlement Class at the negotiating table. The negotiations were conducted at arm's length over a period of many weeks and included a full day of mediation with Judge Maas resulting in a Settlement in principle. (Counsel Decl. ¶, 15). The negotiations were hard fought, and counsel for all Parties participated vigorously with competing agendas. (*Id*.).

11

The settlement discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, consumer class actions. Experienced lawyers advocated for the interests of the Settlement Class throughout the negotiations, utilizing their combined, several decades experience of litigating class actions, including breach of privacy claims, to ensure the proposed Settlement serves the best interests of the Class. (*See* MPA Decl. ¶¶, 47-70).

Class Counsel very thoroughly evaluated the merits of the claims and defenses, the likelihood the Court would certify the litigation for class treatment, and the likelihood of success at trial and upon appeal. (Counsel Decl.,¶ 14). Class Counsel also thoroughly investigated Epoch Times financial condition and  lack of insurance coverage, not only through their own review of available information, but also through the retention of a financial analyst, and independent insurance counsel.  *Id.*,¶ 15. As a result of this analysis, Class Counsel obtained an understanding of the strengths and weaknesses of the litigation.

In performing these and other tasks, Class Counsel has expended approximately 1,307.22 hours of attorney time.  *See* Counsel Decl., ¶ 21.  This amount of hours is reasonable for complex class actions of this type and was compiled from contemporaneous time records maintained by each individual attorney or non-attorney staff member who performed work on the case.  *See id.* Throughout the course of this litigation Class Counsel made efforts to operate as efficiently as possible to avoid unnecessary duplication of efforts amongst their firms, as well as within their individual firms. *Id.* Class Counsel additionally performed an audit of their respective lodestars during the preparation of this motion to ensure that in the event that any efforts on behalf the Settlement Class were inadvertently duplicated, any of the duplicative hours were not included in the total lodestar presented to the Court.  Counsel Decl. ¶ 22.

Moreover, Class Counsel's hourly rates "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11 (1984); *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 617-18 (E.D.N.Y. 2017) ("To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits.") (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009)).

Here, the relevant community is the New York City legal market. Class Counsel's hourly rates in this Action range from $206 to $878 for associates and senior associates and from $750 to $1,380 for partners.  Counsel Decl. ¶ 23, Bates Decl. ¶ 7, Cuthbertson Decl. ¶ 7, Schwartzbaum Decl. ¶ 10, Shamis Decl. ¶ 7. These hourly rates are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in complex litigation in the New York legal market, and comparable rates have previously been approved as reasonable in the Southern and Eastern Districts of New York. *See TAO AN et al., Plaintiffs-Counterclaim-Defendants, v. LUC A. DESPINS & PAUL HASTINGS LLP, Defendants-Counter-Claimants. Additional Party Names: Li*, No. 22CV10062VECJW, 2024 WL 1157281, at *4 (S.D.N.Y. Mar. 18, 2024) (finding Defendant's counsel's hourly rates of $1,990 and $1,440 to be reasonable and in line with prevailing market rates in the district); *Zhongli Sci. & Tech. Grp. Co. v. Fir Tree Partners*, No. 22MC2795NGGRML, 2023 WL 7130666, at *3 (E.D.N.Y. Oct. 30, 2023), objections overruled, No. 22MC02795NGGRML, 2024 WL 525535 (E.D.N.Y. Feb. 9, 2024) (approving as reasonable partner rates ranging from $875 to $1,295 per hour and associate rates ranging from $500 to $630 per hour); *Pearlstein v. BlackBerry Ltd.*, No. 13 CV 7060, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (collecting cases and holding that hourly rates ranging

from $500 for associates to $1,200 for senior partners are reasonable); *In re GSE Bonds Antitrust Litig.*, No. 19 CV 1704, 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) (rates between $350 and  $1,150 per hour held reasonable); *Vista Outdoor, Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (court found that partner hourly rates between $1,165 and $1,260 and associate hourly rates between $569.02 and $753.42 were reasonable); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 CV 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (rates ranging $874 to $1,048 per hour for partners and $569 to $753 per hour for associates found "reasonable under the circumstances, given the experience and work performed by the particular individuals."); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Cap. Markets*, No. 12 CV 9412, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("partner billing rates in excess of $1,000 an hour are by now not uncommon in the context of complex commercial litigation.") (citing *Themis Cap. v. Democratic Republic of Congo*, No. 09 CV 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014)).

Using the lodestar of $994,428.75, the requested fee award of $695,624.40 results in a negative multiplier of approximately .70.

A fee award is also meant to compensate for work still to be performed in the future. Following submission of this motion, Class Counsel will still need to, among other things: (1) draft and file a motion for final approval of the Settlement; (2) prepare for and attend the Final Approval Hearing before the Court; (3) address any objections that may be raised to the Settlement; and (4) communicate with Settlement Class Members to answer any questions they may have. Class counsel estimates they will expend another fifty to one hundred hours bringing the settlement of this action to completion.  *See* Counsel Decl., ¶ 25; *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class

counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). Accordingly, this factor strongly supports the requested fee award.

>     **2.   Second _Goldberger_ Factor: The Magnitude and Complexity of the Litigation**

The magnitude and complexity of the Action support the requested fee award. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." _In re Austrian & German Bank Holocaust Litig._, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no different, where successfully litigating the case to a judgment providing classwide relief would require that Plaintiff, _inter alia_, succeeds in prevailing on a motion for class certification and any motion for decertification, defeats any future motions for summary judgment, and ultimately obtains a class judgment following trial. This process, as with any class action litigation, would be fraught with risks at every stage. At the end of the day, while Plaintiff believes that they would be able to vindicate the claims at trial, Defendant takes the opposite view, and a jury might agree with either Plaintiff or Defendant.

Moreover, the VPPA claims in this action involve novel and complicated forensic, technical, and legal issues concerning Epoch Times's practices related to its use of the Meta Pixel and its subscribers' privacy rights. Thus, Class Counsel was required to develop through extensive forensic analysis an understanding of Epoch Times's network traffic, Epoch Times's use of the Meta Pixel, the exact manner in which the Pixel disclosed video content to Meta as well as class size, class damages, and more. Counsel Decl., ¶ 32. Had the litigation continued, these issues would have required extensive and complex forensic expert testimony. _Id._, ¶ 33.

An additional challenge is the calculation of class-wide damages stemming from the alleged violations by Epoch Times, which would be a complicated and costly process. _See, e.g._,

*Ebbert v. Nassau Cty.*, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) ("On liability and damages, this case likely would have ended up in a classic 'battle of the experts.' With that comes the inherent risk that a jury could be swayed by an expert for the Defendants who could minimize the amount of the Plaintiffs' losses."). While Plaintiff is confident that they could establish the damages incurred by the Settlement Class to the Court's satisfaction, the Settlement eliminates this complexity and risk. Even if Plaintiff was successful in obtaining certification of a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

This case's complexity is not diminished by the fact that Class Counsel's ability to overcome a zealous defense and efficiently reach a settlement. To do so on terms that provide important relief to Plaintiff and the Settlement Class Members, Class Counsel were required to conduct prolonged settlement negotiations over the terms and then the Settlement Agreement, and to take in to account the financial situation of Defendant. *See* Counsel Decl., ¶¶, 13-16. At a minimum, absent settlement, litigation (and potential appellate review) of these issues would likely continue for years before Plaintiff or the Settlement Class would obtain any recovery, which might then be diminished by immense costs, expenses, and/or Defendant's ability to pay. By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff and the Settlement Class Members avoid significant expense and delay, and instead ensure immediate injunctive relief to protect the Settlement Class's information and preserve their ability to individually seek damages resulting from the conduct that is the subject of this litigation. *See Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending parties for negotiating early settlement). Accordingly, this factor supports the requested fee award.

**C.      Third *Goldberger* Factor: The Risks of the Litigation**

The risks of continuing to litigate this case through trial strongly support the requested fee award. This factor is often cited as the "first, and most important, *Goldberger* factor." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) (internal quotation marks omitted). Class Counsel took the risk of prosecuting this litigation on a full contingency basis, without charging Plaintiff or any Settlement Class Members for fees or expenses. *See* Counsel Decl., ¶ 29; *see also Goldberger*, 209 F.3d at 53 ("(o)f course contingency risk . . . must be considered in setting a reasonable fee."); *Fleisher*, 2015 WL 10847814, at *21 n.16 ("Contingency risk is the principal, though not exclusive factor, courts should consider in their determination of attorneys' fees.") (internal quotation marks omitted).[9]

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (citation omitted). For the purpose of settlement, Epoch Times neither admits nor denies any wrongdoing. If the matter proceeded, Plaintiff expects Epoch Times would vigorously defend itself on the merits, at each stage of litigation and likely on appeal, as it already did in its motion to dismiss. Further, Defendant has indicated that it does not have insurance to cover the allegations in this litigation and could not withstand a class-wide monetary settlement much less a class-wide judgment, such that that even if Plaintiff ultimately prevailed in the litigation, the Settlement Class would not receive a significant recovery. Further, Plaintiff anticipated a zealous "battle of the experts" with respect to Defendant's claims, and in fact Plaintiff has already worked with an expert in spite of

---

[9] In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, the Second Circuit observed that "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."

the early stages of this litigation. For these reasons, although Plaintiff is confident in the merits

of this case, the risks of establishing liability and damages were significant. Should any individual

Settlement Class Member wish to pursue this matter in spite of these risks, the settlement obtained

by Class Counsel preserves their ability to do so.

The litigation settled before a ruling on class certification, and the certification requested

herein is for settlement purposes only. While Plaintiff believes that the Court would certify a

litigation class, Epoch Times would zealously oppose the motion. Furthermore, even if the Court

were to certify a litigation class, the certification can be reviewed and modified at any time. *Gen.*

*Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order

is entered, the judge remains free to modify it in the light of subsequent developments in the

litigation."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that

"[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case

might not be certified is not illusory").

In pursuing the investigation and litigation against Defendant, Class Counsel were aware

that resolution of the case in Plaintiff's favor might take years, with the possibility that the claims

would never be vindicated. *See* Counsel Decl., ¶ 32. Despite this, Class Counsel vigorously

investigated, negotiated and litigated this case without any assurance that they would ever be

compensated. All of these risks were apparent when Plaintiff's Counsel began this action, further

justifying the requested fee award.

### D.    Fourth *Goldberger* Factor: The Quality of Representation

Courts "have consistently recognized that the result achieved is a major factor to be

considered in making a fee award and in assessing the quality of the representation." *Fleisher*,

2015 WL 10847814, at *21. Courts also account for the quality of opposing counsel. *See, e.g.,*

*MetLife Demutualization*, 689 F. Supp. 2d at 362.

Here Class Counsel's substantial prior experience in prosecuting complex class action cases on behalf of consumers, including numerous class actions involving Meta Pixels and VPPA violations, was an important factor in achieving a settlement. *See* Counsel Decl., ¶ 32. Class Counsel was able to obtain a result ensuring that Defendant ceased the harmful conduct alleged in the complaint and is enjoined from engaging in that conduct in the future. Further, Class Counsel preserved the rights of individual Settlement Class Members to seek compensation for damages sustained as a result of the violations alleged in the complaint, should they choose to pursue this matter on their own. And Class Counsel obtained these results while facing opposing counsel of significant skill and reputation. *See Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *11 (S.D.N.Y. June 27, 2012) ("Class Counsel achieved a positive result in this case while facing well-resourced and experienced defense counsel."). Accordingly, this factor weighs strongly in favor of the reasonableness of the requested fee award.

### E.     Fifth *Goldberger* Factor: The Requested Fee in Relation to the Settlement

Despite efficiently achieving all the injunctive relief they could have obtained under the VPPA had they prevailed at trial, Class Counsel agreed to seek a fee award significantly less than their actual lodestar. This strongly supports approval of the request. Class Counsel seek $695,624.40 in attorneys' fees, reflecting a *negative* lodestar multiplier of .70. "Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a "presumptively reasonable fee." *Millea v. Metro-N. R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011); (*N.G.B. v. New York City Dep't of Educ.*, No. 21-CV-11211 (LJL), 2023 WL 2711753, at *12 (S.D.N.Y. Mar. 30, 2023) ("[T]here is ... a strong presumption that the lodestar figure represents a reasonable fee.").

In contrast to the negative multiplier requested here, positive multipliers are commonly awarded in this district and the Second Circuit. "In complex litigation, lodestar multipliers

between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) ; *see e.g. In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *16 (E.D.N.Y. Jan. 26, 2024) (approving a lodestar multiplier of 2.35, which the court determined is "a reasonable multiplier that falls comfortably in line with multipliers approved by courts in this Circuit and around the country."); *Velez v. Novartis Pharm. Corp.,* 04 Civ. 9194(CM), 2010 WL 4877852, at *23 (S.D.N.Y. Nov. 30, 2010) (finding the requested multiplier of 2.4 "falls well within (indeed, at the lower end) of the range of multipliers accepted within the Second Circuit").

Class Counsel's fee request is modest and reasonable compared to the benefits Class Counsel has achieved for Settlement Class Members. Class Counsel has efficiently achieved all the injunctive relief they could have obtained under the VPPA had they prevailed at trial. Epoch Times (1) has removed all Pixels embedded in any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that website webpage; and (2) has implemented and completed a process to ensure Epoch Times does not possess "personally identifiable information" (as that term is defined in the VPPA) of Settlement Class Members generated by Pixel. Am. Settlement Agreement., ¶ 2.1. As part of the Settlement, Epoch Times also agreed that it shall not resume operation of the Pixel on any webpage of its websites accessible in the United States that include video content and a URL that identifies the specific video requested or obtained from that website webpage. *Id.*, ¶3.1.1). Importantly, Settlement Class Members do not release any claims for damages or other monetary relief as a result of the Settlement.

F.     **Sixth *Goldberger* Factor: Public Policy Considerations Favor the Requested Fee Award**.

Public policy considerations weigh in favor of granting the Fee Request.  In awarding attorneys' fees, the Second Circuit "take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Beckman*, 293 F.R.D. at 477.  This class action on behalf of the Settlement Class has "resulted in a settlement that will improve the experiences of customers . . . ." *Jermyn*, 2012 WL 2505644, at *12.  Moreover, through this action, Plaintiff has operated as a private attorney general to police the fallout from the alleged violations of the VPPA.  Only Plaintiff's and Class Counsel's willingness to bring this litigation has ensured that Defendant will cease to engage in the alleged conduct.

An award of attorneys' fees helps to ensure that "plaintiffs' claims [will] . . . be heard." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  If courts denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.; see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003), *aff'd sub nom*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (class action fee awards "must . . . serve as an inducement for lawyers to make similar efforts in the future").  This and the other *Goldberger* factors support approval of the attorneys' fees requested.

G.     **The Absence of Settlement Class Member Objections to the Fee Request Further Support It Is Reasonable**.

An additional factor in favor of the reasonableness of a request for attorneys' fees is the

extent to which the class has raised any objections to the request. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*22 (S.D.N.Y. Dec. 18, 2019) (absence of objections to fee request at time of final approval hearing, despite deadline for objections having not yet occurred, "militates in favor of approval of the Fees as requested."). The deadline for objections is April 15, 2024. *See* ECF 91. As of the date of the filing of this Motion, no objections to the Settlement have been received. Accordingly, this factor weighs in favor of approval of the requested attorneys' fees.

**H. Class Counsel's Requested Litigation Costs Are Reasonable and Should Be Approved.**

The VPPA allows for and courts typically permit counsel to recover reasonable out-of-pocket expenses. 18 U.S.C. § 2710(c)(2)(C); *Beckman,* 293 F.R.D. at 482, *citing In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig*., 302 F. Supp. 2d at 183 n.3 (internal quotation marks omitted).

Class Counsel seek reimbursement of costs and expenses totaling $34,375.60 which includes amounts spent on, *inter alia*, filing and pro hac vice fees, forensic investigation, experts and mediation. *See* Counsel Decl., ¶ 2. These expenses are of the type of expenses routinely charged to hourly clients, are appropriately documented, and were necessary and reasonable to prosecute the litigation. *Id.* Accordingly, reimbursement of these out-of-pocket litigation expenses is appropriate. *See Copley v. Bactolac Pharm., Inc.*, No. 2:18-CV-00575-FB-PK, 2023 WL 4490286 , at \*4 (E.D.N.Y. May 23, 2023) (finding costs associated with expert witness expenses, document production and storage, and travel in connection with litigation "reflect[ ] expenses

typically billed by attorneys to paying clients in the marketplace."); *Baker v. Saint-Gobain Performance Plastics Corp*., No. 116CV00917LEKDJS, 2022 WL 1025185, at *9 (N.D.N.Y. Feb. 4, 2022) (approving as reasonable litigation expenses that included "expert witness expenses, costs associated with document production and storage, deposition expenses, travel in connection with litigation, and expenses related to procuring the services of a well-qualified mediator.").

## I.    The Requested Service Award Is Reasonable and Should Be Approved.

Service awards are commonly awarded in class action cases to compensate a plaintiff for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained. *Beckman*, 293 F.R.D. at 483, *citing Reyes v. Altamarea Group LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011). Courts consider such compensation important. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

For his commitment to this case and work on behalf of the Settlement Class, Plaintiff seeks a modest $2,500.  Plaintiff spent significant time protecting the interests of the Settlement Class and advancing the VPPA claims against Defendant through their involvement in this case. Counsel Decl., ¶ 35. Plaintiff assisted Class Counsel in investigating their claims by providing information necessary to draft and file the complaint. *Id*. During the course of this litigation, Plaintiff kept in regular contact with Class Counsel to receive updates on the progress of the case and to discuss strategy and settlement. *Id*. Plaintiff participated in extensive interviews, reviewed pleadings and other documents associated with the case, and assisted with responses to discovery propounded by Defendant, including allowing his computer device to be forensically imaged for discovery. *Id.* Plaintiff was prepared to take on other responsibilities of a class representative, including being deposed and testifying at trial.

The requested $2500 award is reasonable and modest relative to awards regularly granted by courts in this jurisdiction and the request should be granted. *See Beckman,* 293 F.R.D. at 483 (granting an award of $5,000 to $7,500 to plaintiffs); *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV359LEKATB, 2023 WL 3251421, at *1 (N.D.N.Y. May 3, 2023) (approving a $2,500 incentive award to each named plaintiff); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124–25 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards for $2,500 or more are commonly accepted).

## CONCLUSION

For the reasons set forth above, Class Counsel and Plaintiff respectfully request that the Court award Class Counsel $695,624.40 for attorneys' fees, $34,375.60 for reimbursement of expenses, and a $2,500 Service Award to Class Representative.

Dated: April 8, 2024                    Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

Douglas I. Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9500 / Fax: (212) 355-9592

Michael W. Sobol (SBN 194857)
msobol@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor

San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Hank Bates (SBN 167688)
hbates@cbplaw.com
Lee Lowther (*pro hac vice*)
llowther@cbplaw.com
Courtney E. Ross (*pro hac vice*)
cross@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201
(501) 312-8500
(501) 312-8505

Andrew J. Shamis (5195185)
ashamis@shamisgentile.com
Edwin E. Elliott (*pro hac vice*)
edwine@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299

*Attorneys for Plaintiff Lawrence Czarnionka and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of April 2024, a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure via CM/ECF on all counsel of record.

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**

<u>/s/ Gary M. Klinger</u>
Gary M. Klinger
