**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAWRENCE CZARNIONKA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THE EPOCH TIMES ASSOCIATION, INC.,<br><br>        Defendant. | Case No.: 1:22-cv-06348-AKH<br><br>**UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge Alvin K. Hellerstein |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ......................................................................................... 1

II.  PROCEDURAL BACKGROUND ................................................................. 4

III.  SUMMARY OF THE SETTLEMENT TERMS ............................................ 4

    A.  The Settlement Class Encompasses Everyone Injured by the Privacy Intrusions Plaintiff Alleges Within the Statute of Limitations Period. ................. 4

    B.  Epoch Times Has Agreed to, and Implemented, Significant Remedial Measures. ............................................................................... 5

    C.  Epoch Times Agreed to Significant Injunctive Relief. ......................................... 5

    D.  The Settlement Release Does Not Release Settlement Class Members' Damages Claims. ......................................................................... 5

    E.  The Settlement Agreement Provisions Related to (i) a Service Award, and (ii) Attorneys' Fees and Expenses. ....................................................... 6

IV.  THE NOTICE PROGRAM ........................................................................... 7

    A.  The Reasonable Notice Program Approved by the Court was Implemented Correctly and Appropriately, in Accordance with the Court's Order. .................. 7

    B.  No Settlement Class Member Objected to the Settlement. ................................... 8

V.  LEGAL STANDARDS ................................................................................. 9

VI.  ARGUMENT ............................................................................................... 10

    A.  The Court Should Grant Final Approval to the Settlement. ............................... 10

        1.  The Settlement Is Procedurally Fair. ........................................................ 10

            a.  The Settlement Class has been vigorously represented. .............. 11

            b.  The Settlement was negotiated at arm's-length. ......................... 12

        2.  The Relief Provided to the Settlement Class is Adequate. ..................... 13

            a.  The Costs, Risks, and Delay of Trial and Appeal ....................... 14

            b.  Effectiveness of Any Proposed Method of Distributing Relief and Any Agreement Required to Be Identified. ............... 16

            c.  The Terms of any Proposed Award of Attorneys' Fees ............. 16

        3.  The Settlement Treats Settlement Class Members Equitably. ................. 17

        4.  Defendant Lacks the Ability to Withstand a Greater Judgment Consistent with the Claimed Damages. ................................................... 17

5.     The Reaction of the Settlement Class Supports Final Approval.............. 18

6.     Defendant Lacks the Ability to Withstand a Greater Judgment Consistent with the Claimed Damages. ................................................. 18

B.     The Court Should Confirm Settlement Class Certification. ............................... 20

1.     The Settlement Class Is Sufficiently Numerous. .................................... 21

2.     Several Questions of Law and Fact Are Common to the Settlement Class. ...................................................................................................... 21

3.     The Class Representative's Claim Is Typical of the Settlement Class Members. ....................................................................................... 22

4.     The Class Representative and Class Counsel Have Fairly and Adequately Represented the Settlement Class. ....................................... 23

5.     The Settlement Class Satisfies Rule 23(b)(2). ....................................... 24

C.     The Notice Program Was Reasonable and Provided Due, Adequate, and Sufficient Notice to the Settlement Class. ........................................................ 25

VII.     CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

Page

**CASES**

*Amchem Prods., Inc. v. Windsor*,

521 U.S. 591 (1997) ................................................................................................ 20

*Arista Records LLC v. Usenet.com Inc.*,

No. 07 Civ. 8822, 2010 WL 3629587, (S.D.N.Y. Sept. 16, 2010) ........................... 15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,

504 F.3d 229 (2d Cir. 2007) ................................................................................... 21

*City of Detroit v. Grinnell Corp.*,

495 F.2d 448 (2d Cir. 1974) ................................................................ 10, 14, 17, 18

*Consol. Rail Corp. v. Town of Hyde Park*, 4

7 F.3d 473 (2d Cir. 1995) ....................................................................................... 21

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*,

502 F.3d 91 (2d Cir. 2007) ..................................................................................... 11

*D'Amato v. Deutsche Bank*,

236 F.3d 78 (2d Cir. 2001) ..................................................................................... 13

*Denney v. Deutsche Bank AG*,

443 F.3d 253 (2d Cir. 2006) ................................................................................... 23

*Diaz v. Google LLC*,

No. 5:21-cv-3080, ECF No. 78 (N.D. Cal. Oct. 31, 2022) ...................................... 24

*Ebin v. Kangadis Food Inc.*,

**TABLE OF AUTHORITIES**
**(continued)**

Page

297 F.R.D. 561 (S.D.N.Y. 2014) ........................................... 22

*Fleisher v. Phoenix Life Ins. Co.*,

No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)................................... 14

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,

301 F.R.D. 116 (S.D.N.Y. 2014) ........................................... 22

*Frank v. Eastman Kodak Co.*,

228 F.R.D. at 186 (W.D.N.Y. 2005) ........................................ 18

*Gaston v. LexisNexis Risk Solutions, Inc.*,

483 F. Supp. 3d 318 (W.D.N.C. 2020) ..................................... 24

*Gilliam v. Addicts Rehab. Ctr. Fund*,

2008 U.S. Dist. LEXIS 23016, (S.D.N.Y. Mar. 24, 2008) ...................................... 19

*Hicks v. Morgan Stanley & Co.*,

2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................... 15

*Hilal Khalil Homaidan v. Sallie Mae, Inc.*,

2023 Bankr. LEXIS 966, (E.D.N.Y. Bankr. April 11, 2023) ...................................... 24

*In re Am. Bank Note Holographics, Inc.*,

127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................... 19

*In re Austrian & German Bank Holocaust Litig.*,

80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................... 14

*In re Citigroup Inc. Bond Litig.*,

296 F.R.D. 147 (S.D.N.Y. 2013) ......................................... 13

*In re Currency Conversion Fee Antitrust Litig.*,

263 F.R.D. 110 (S.D.N.Y. 2009) ........................................................ 14

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,

No. 05-cv-10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................... 9

*In re IMAX Sec. Litig.*,

283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................ 17

*In re Namenda Direct Purchaser Antitrust Litig.*,

462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................. 14

*In re NASDAQ Market–Makers Antitrust Litig.*,

169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................ 25

*In re PaineWebber Ltd. P'ships Litig.*,

171 F.R.D. 104 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997) ......................................... 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

330 F.R.D. 11, 36 (E.D.N.Y. 2019) ............................................... 14, 20

*In re Scotts EZ Seed Litig.*,

304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................ 23

*In re Synchrony Fin. Sec. Litig.*,

No. 3:18-CV-1818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023) ................................. 10

*Liberty Res., Inc. v. City of Philadelphia*,

No. CV 19-3846, 2023 WL 3204018 (E.D. Pa. May 1, 2023) ................................. 16

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,

No. 517CV359LEKATB, 2023 WL 3251421, at *4 (N.D.N.Y. May 3, 2023) ....................... 14

*Marisol A. v. Guiliani,*

126 F.3d 372, 376 (2nd Cir. 1997) ............................................................. 22

*Martens v. Smith Barney Inc.*,

181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................... 23

*Matheson v. T-Bone Rest., LLC,*

No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ............................. 13

*Mayhew v. KAS Direct, LLC,*

No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018) .................................. 25

*McMahon v. Olivier Cheng Catering & Events, LLC,*

No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................. 13

*Melito v. Am. Eagle Outfitters, Inc.*,

No. 14-cv-02440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ................................. 9

*Mollet v. Netflix Inc.*,

795 F.3d 1062 (9th Cir. 2015) .................................................................. 15

*Morris v. Affinity Health Plan, Inc.*,

859 F. Supp. 2d 619 (S.D.N.Y. 2012) ......................................................... 14

*Moses v. New York Times Co.*,

79 F.4th 235, 242 (2d Cir. 2023) ............................................................... 10

*Newman v. Stein,*

464 F.2d 689 (2d Cir. 1972) ...................................................................... 18

*Robidoux v. Celani*,

    987 F.2d 931 (2nd Cir. 1993) ................................................................ 22

*Selby v. Principal Mut. Life Ins. Co.*,

    No. 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003) .............................. 20

*Stinson v. City of N.Y.*,

    256 F. Supp. 3d 283 (S.D.N.Y. 2017) .................................................... 14

*Sykes v. Mel S. Harris & Assocs. LLC*,

    780 F.3d 70 (2d Cir. 2015) ................................................................ 24

*Tiro v. Public House Investments, LLC*,

    2013 WL 2254551 (S.D.N.Y. May 22, 2013) ......................................... 20

*Toure v. Cent. Parking Sys.*,

    2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ........................... 23

*Trinidad v. Breakaway Courier Sys., Inc.*,

    2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) .......................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. at 350 (2011) ........................................................... 21, 24, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,

    396 F.3d 96 (2d Cir. 2005) ........................................................... 9, 25

*Welch v. Theodorides-Bustle*,

    273 F.R.D 692 (N.D. Fla. 2010) ........................................................ 24

*Zivkovic v. Laura Christy LLC*,

329 F.R.D. 61 (S.D.N.Y. 2018) ............................................................... 21

**STATUTES**

Video Privacy Protection Act, 18 U.S.C. § 2710 ...................................... 1

**RULES**

Fed. R. Civ. P. 23(a) ............................................................................... 20

Fed. R. Civ. P. 23(a)(1) .......................................................................... 21

Fed. R. Civ. P. 23(a)(2) .......................................................................... 21

Fed. R. Civ. P. 23(a)(3) .......................................................................... 22

Fed. R. Civ. P. 23(a)(4) .......................................................................... 23

Fed. R. Civ. P. 23(b) ............................................................................... 20

Fed. R. Civ. P. 23(b)(2) ..................................................................... passim

Fed. R. Civ. P. 23(b)(3) .......................................................................... 12

Fed. R. Civ. P. 23(c)(3) ........................................................................... 25

Fed. R. Civ. P. 23(e) ................................................................................. 9

Fed. R. Civ. P. 23(e)(2) .......................................................................... 10

Fed. R. Civ. P. 23(e)(2)(A) ................................................................ 10, 13

Fed. R. Civ. P. 23(e)(2)(B) ................................................................ 10, 13

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................... 17

Fed. R. Civ. P. 23(e)(2)(i)–(iv) ............................................................... 14

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................... 13

Page

Fed. R. Civ. P. 23(e)(2)(C)(i)...................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(ii)..................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C)(iv).................................................................... 16

Fed. R. Civ. P. 23(e)(3)................................................................................ 16

**OTHER AUTHORITIES**

*Newberg & Rubenstein on Class Actions* § 13:44 (6th ed.)..................................... 9, 20

Plaintiff Lawrence Czarnionka ("Plaintiff" or "Class Representative")[1] respectfully requests this Court grant final approval of the injunctive relief-only Settlement Agreement he has reached with the Epoch Times Association, Inc. ("Epoch Times" or "Defendant."). The Court should grant final approval of the Settlement because the Class Representative and Class Counsel have adequately represented the Settlement Class, the Settlement Agreement was negotiated at arm's length, the relief the Settlement provided for the class is fair, reasonable, and adequate, and the Settlement treats all Settlement Class Members equitably relative to one another. These conclusions are supported by, among other things: (1) that Epoch Times' agreed-upon business practice changes are the exact same ones Plaintiff would hope to obtain at any trial; (2) Settlement Class Members do **not** release their damages claims against Epoch Times; and (3) even after a notice campaign, no Settlement Class Members objected to the Settlement.[2]

## I.   <u>INTRODUCTION</u>

Plaintiff brought this action alleging Epoch Times violated his and other similarly situated individuals' rights under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), by disclosing his personally identifiable information to Meta Platforms, Inc. ("Meta," f/k/a Facebook Inc.). Specifically, Plaintiff alleged Epoch Times voluntarily installed the Meta tracking Pixel on its websites and configured the Pixel to disclose to Meta the Facebook ID and the video content he and other Epoch Times subscribers requested or obtained. Through this litigation and the Settlement Agreement, with the Court's approval, Plaintiff will have remedied these privacy-invasive practices.

---

[1] Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement.
[2] Epoch Times does not oppose this motion and in so doing noted for Plaintiff Settlement Agreement Paragraph 13.8 and all others related to admissions and evidence concerning liability, injury, statutory violations, class certifiability, fault and any other allegations of wrongdoing.

*First*, because of this litigation, Epoch Times has removed the Pixel from any webpage an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that website webpage thus ending the core conduct Plaintiff challenges in this action. ECF No. 88.[3]

*Second*, Epoch Times implemented and completed a process to ensure it does not possess any Settlement Class Member's "personally identifiable information," as defined in the VPPA, generated by the Pixel.

*Third*, Epoch Times has agreed to an injunction restraining it from re-installing and operating the Pixel on any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained, thus ensuring Epoch Times cannot resume the conduct challenged in this action. Importantly, Plaintiff secured this relief without releasing any Settlement Class Member's claim for damages or other monetary relief.

Plaintiff agreed to settle this lawsuit without a damages component because, as detailed in Plaintiff's Unopposed Motion and Memorandum of Law In Support of Preliminary Approval of Class Action Settlement ("Preliminary Approval Brief," ECF No. 74), Epoch Times has no insurance coverage for the claims asserted in this Action and its finances do not permit a class-wide monetary settlement consistent with claimed damages, much less a class-wide judgment. Despite these obstacles, the Settlement Agreement fully redresses the alleged privacy violations at

---

[3] In December 2023, Mr. Serge Egelman, the independent expert certified by this Court pursuant to Paragraph 2.1 of the Settlement Agreement, "conducted an independent analysis and determined that data is not being transmitted between the relevant Epoch Times webpages and Meta, which is consistent with Epoch Times removing all Pixels embedded in any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that website webpage." ECF No. 88.

issue in this litigation, ensures Epoch Times cannot resume the challenged conduct without obtaining Court approval to do so, and leaves Settlement Class Members' damages claims unreleased and unimpaired. Class Counsel strongly believes that the result reached in the Settlement is as good as, if not better than, any result that could have been achieved if they were to prevail at trial. Settlement at this stage alleviates years of potential harm to Settlement Class Members and others that would occur if Epoch Times were to continue the conduct alleged in the complaint during a drawn-out litigation and appeals process. *See* Joint Decl. of Douglas Cuthbertson and Hank Bates in Support of Pl.'s Unopposed Mot. for Preliminary Approval of Class Action Settlement (ECF No. 75, "Joint Decl.") ¶ 34.

On January 22, 2024, after the Parties amended the Settlement Agreement pursuant to the Court's request (*see* ECF No. 86, Ex. A ("Settlement")), this Court granted preliminary approval of this proposed Class Action Settlement. *See* ECF No. 91. Thereafter, the Parties implemented the Court-approved Notice Program. *See* Decl. of Jeanne C. Finegan of Kroll Settlement Admin. in Connection with Final Approval of Settlement ("Kroll Decl.") ¶ 3 (filed concurrently herewith). The results were overwhelmingly positive: there are *zero objections* to the Settlement or to Class Counsel's fee request. *Id.* ¶¶ 12–13.

For these reasons, the Settlement satisfies all Second Circuit criteria for final approval. Plaintiff thus respectfully requests that the Court (1) grant final approval of the Settlement as fair, reasonable, and adequate, (2) certify the Settlement Class for settlement purposes, pursuant to Federal Rule of Civil Procedure 23(b)(2), (3) find that the Notice Program was reasonable and provided due, adequate, and sufficient notice of the Settlement to Settlement Class Members, (4) order the Released Parties be released from the Released Claims (which excludes claims for

damages) by the Releasing Parties upon the Effective Date, (5) dismiss the Action with prejudice, and (6) enter Final Judgment. A proposed order is attached hereto as **Exhibit 1.**

## II.     PROCEDURAL BACKGROUND

For the purposes of brevity and efficiency, Plaintiff incorporates the procedural background in his Preliminary Approval Brief (ECF No. 74) at 3–7, noting that after the submission of that brief and the November 30, 2023 conference on the same, Plaintiff submitted: (1) a certification from an independent expert concerning whether Epoch Times had removed the Pixel from its websites (*see* ECF No. 87, so ordered as ECF No. 88) and (2) an Amended Settlement Agreement.  *See* ECF No. 86.

## III.     SUMMARY OF THE SETTLEMENT TERMS

The Settlement requires Epoch Times to do the following: (1) undertake the remedial measures described below; (2) be bound by the injunctive relief described below; (3) pay the costs of the Notice Program; (4) pay a Service Award to Plaintiff approved by the Court of no more than $2,500.00; and (5) pay attorneys' fees and expenses approved by the Court not to exceed $730,000.00.

### A.     The Settlement Class Encompasses Everyone Injured by the Privacy Intrusions Plaintiff Alleges Within the Statute of Limitations Period.

The "Settlement Class" is defined as:

All individuals residing in the United States who were Facebook account holders and subscribers to Defendant's digital services during the Class Period and who requested or obtained any videos on any Epoch Times website while an active Facebook account holder during the Class Period.

Settlement ¶ 1.19. The "Class Period" is defined as "the period from July 26, 2020,[4] to and through the date of Preliminary Approval." *Id.* ¶ 1.3.

---

[4] July 26, 2020 is two years before this action was filed. ECF No. 1. The VPPA has a two-year statute of limitations period. 18 U.S. Code § 2710(c)(3).

### B. Epoch Times Has Agreed to, and Implemented, Significant Remedial Measures.

Pursuant to the Settlement, Epoch Times agreed to (i) remove all Pixels embedded in any webpage on an Epoch Times website accessible in the United States that includes video content and a URL that identifies the specific video requested or obtained from that webpage, and (ii) implement and complete a process to ensure Epoch Times does not possess "personally identifiable information" (as that term is defined in the VPPA) of Settlement Class Members generated by the Pixel. *Id.* ¶ 2.1. These remedial measures have already been implemented as confirmed by representations and warranties Epoch Times makes in the Settlement Agreement and the forensic analysis of Epoch Times websites conducted by Serge Egelman, the independent expert certified by this Court. *Id.* ¶¶ 5.1.1–5.1.3; *see also* ECF No. 88.

### C. Epoch Times Agreed to Significant Injunctive Relief.

Epoch Times shall not resume operation of the Pixel on any webpage of its websites accessible in the United States that include video content and a URL that identifies the specific video requested or obtained from that webpage. Settlement ¶ 3.1.1. Plaintiff may seek from the Court an injunction to enforce the terms of this Agreement, including Epoch Times's representations and warranties stated in paragraph 5.1 and its subparts. *Id.* ¶ 3.1.2. Notwithstanding the above, Epoch Times may seek relief from this injunction upon amendment or repeal of the VPPA or upon implementation of a VPPA-compliant consumer consent form, but only by filing a motion with this Court for relief from this injunction. *Id.*

### D. The Settlement Release Does Not Release Settlement Class Members' Damages Claims.

In exchange for undertaking the above described relief, Epoch Times will receive a full release of any and all claims that have been asserted in the Action, and any claim, liability, right, demand, suit, matter, obligation, action, or causes of action, of every kind and description, that the

Releasing Parties have or could have presented or asserted against Epoch Times arising out of or reasonably relating to the operative factual predicate alleged in or otherwise described by Plaintiff's complaint in the Action. *Id.* ¶ 1.15. Importantly, however, because this is a settlement under Rule 23(b)(2), the Released Claims expressly "**do not include claims for damages or other monetary relief**"[5] and "do not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement." *Id* (emphasis in original). Defendant, for purposes of the Settlement, neither admits nor denies wrongdoing. *Id.* ¶ 10.

### E.     The Settlement Agreement Provisions Related to (i) a Service Award, and (ii) Attorneys' Fees and Expenses.

The Settlement Agreement requires Epoch Times to pay a Service Award to Plaintiff approved by the Court of no more than $2,500.00 and attorneys' fees and expenses approved by the Court not to exceed $730,000.00. Importantly, the Parties completed negotiations and reached agreement on all class-wide relief and substantive terms before turning to negotiating attorneys' fees, expenses, and the service award in arm's-length negotiations mediated by Judge Maas. Joint Decl. ¶ 72. In a separate motion, on April 8, 2024, Class Counsel moved for an award of $695,624.40 for a portion of their full attorneys' fees, $34,375.60 in reimbursement of litigation expenses, and $2,500 as a modest service award. At the time of that motion, Class Counsel had accumulated a combined lodestar of $994,428.75 (rendering the requested fee award a negative multiplier of approximately .70 on Class Counsel's lodestar at that time). ECF No. 93.

---

[5] For emphasis, this phrase is bolded and underlined in the Amended Settlement Agreement itself, and as posted on the Settlement Website: https://www.epochtimesvppasettlement.com/home/8730/DocumentHandler?docPath=/Documents/2024_1_9_D_Cuthbertson_Letter_to_Court_re_Amended_Settlement_Agreement_docket_86_.pdf.

## IV.    THE NOTICE PROGRAM

### A.    The Reasonable Notice Program Approved by the Court was Implemented Correctly and Appropriately, in Accordance with the Court's Order.

Class notice is not required for injunctive relief settlements under Rule 23(b)(2), as explained in greater detail below. Nevertheless, following the Court's preliminary approval of the Settlement and appointment of Kroll Settlement Administration ("Kroll") as Notice Administrator *(see* Prelim. Approval Order ¶ 6), Kroll oversaw a robust online notice campaign. *See* Kroll Decl. ¶¶ 2–11. As Notice Administrator, Kroll was responsible for effectuating the Notice Program consistent with the terms of the Settlement Agreement, as approved by the Court. Settlement ¶ 8.2; Kroll Decl. ¶ 2.

Kroll publicized notice via social media advertising through Facebook and Instagram, Google keyword search advertising, a toll-free information telephone number, and a settlement website. Kroll Decl. ¶¶ 4–11.

First, Kroll used social media advertising because Settlement Class Members are, by definition, Facebook account holders. *Id.* ¶ 6 n.2. Social media ads in Facebook and Instagram appeared across users' Newsfeeds and Stories.[6] *Id.* ¶ 6. These ads employed multiple layers of targeting and focused on users who followed or interacted with relevant pages, accounts, videos, posts and/or tags. *Id.* Such pages and accounts included Epoch Times Facebook page, Epoch TV Facebook page, Epoch Times Instagram account, and Epoch TV Instagram account. Posts and hashtags included *#epochtimes* and *#epochtimesnews*. *Id.*

Second, Kroll Media utilized keyword search advertisements on Google. *Id.* ¶ 7. When searching for specific keywords or phrases related to the settlement, a sponsored ad link appeared,

---

[6] "Newsfeeds are where Facebook and Instagram users look for information about friends, family, news, and brand information. Stories are brief, immersive, thoughts or moments shared by a user and appear at the top of a user's Newsfeed." *Id.*, ¶ 6, n.5.

providing brief information about the settlement, and directing the user to the settlement website for more information. *Id.*

Third, Kroll established a toll-free telephone number, (833) 933-7183, for Settlement Class Members to call and obtain additional information regarding the settlement through an Interactive Voice Response ("IVR") system with voicemail and callbacks functionality. *Id.* ¶ 8. As of May 2, 2024, the IVR system has received 30 calls and zero voicemails. *Id.*

Fourth, Kroll's well-designed website ([www.EpochTimesVPPASettlement.com](http://www.EpochTimesVPPASettlement.com)) "went live" on February 21, 2024 and contains a stand-alone descriptions of the injunctive relief and remedial measure; a summary of the Action and the settlement terms; a "Contact" page with Notice Administrator information; copies of the Settlement Agreement, long form notice, and Preliminary Approval Order; the objection deadline; a summary of Settlement Class Member rights, including how to object to the settlement; and the date, time, and location of the final approval hearing. *Id.* ¶ 10.

The Notice Program[7] reflects a particularly appropriate, highly targeted, and contemporary way to provide notice to Settlement Class Members. *Id.* ¶ 14. The Notice Administrator attests that the efforts undertaken in this Notice Program are of the highest modern communication standards, are reasonably calculated to provide notice, and are consistent with reasonable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

### B. No Settlement Class Member Objected to the Settlement.

The Notice Program informed Settlement Class Members of their right to object to any part of the Settlement, including Class Counsel's request for attorneys' fees and expenses and/or the

---

[7] Epoch Times has the sole responsibility to pay for and fund the Notice Program, including all fees and expenses of the Notice Administrator. Settlement ¶ 9.5.

request for a Service Award for the Class Representative. Kroll Decl. ¶ 12. The postmark deadline to object ended on April 22, 2024. *Id.* Following conclusion of the Notice Program, Class Counsel and the Notice Administrator received *no objections*, and are aware of none received by the Court. *Id.* ¶ 13.

## V.   <u>**LEGAL STANDARDS**</u>

The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord, e.g., Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440 (VEC), 2017 WL 3995619, at *11 (S.D.N.Y. Sept. 11, 2017) ("In general, the approval of a class settlement is within the district court's discretion, 'which should be exercised in light of the general judicial policy favoring settlement.'"); *see also Newberg & Rubenstein on Class Actions* § 13:44 (6th ed.) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (same).

When applying the Rule 23(e)(2) factors, courts in this Circuit evaluate both the *substantive* terms of the settlement and whether it is *procedurally* fair—i.e., "whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (internal quotations omitted and cleaned up). That evaluation requires consideration of the nine "*Grinnell* factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which overlap with Rule 23(e)(2) factors.[8] *See, e.g., Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors.").

## VI.    ARGUMENT

### A.    The Court Should Grant Final Approval to the Settlement.

Considering the facts of this case under the *Grinnell* factors, the Court should conclude that the Settlement receive final approval.

#### 1.    The Settlement Is Procedurally Fair.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Grinnell*, 495 F.2d at 463 (the third *Grinnell* factor—i.e. the stage of the proceedings and the amount of discovery completed—overlaps with 23(e)(2)(B)'s "negotiated at arm's length" factor). In assessing adequacy of representation, the court focuses on

---

[8] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

### a. The Settlement Class has been vigorously represented.

Adequacy of representation requires consideration of whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Plaintiff's interests are aligned with the Settlement Class: each suffered the same alleged injury (the improper disclosure of personally identifiable information to Meta without consent via the Pixel) and have the same interest in halting that disclosure resulting in the cessation of the collection and possession of their personally identifiable information. Moreover, the remedial and injunctive relief uniformly benefits all members of the Settlement Class, so there can be no conflict between Plaintiff and the members of the Settlement Class. Plaintiff has adequately represented the Settlement Class, including by agreeing to step forward to prosecute the Settlement Class's rights under the VPPA, remaining actively involved through the course of the litigation and settlement, assisting Class Counsel in investigating the claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and consulting with Class Counsel concerning settlement. Joint Decl. ¶¶ 73–75.

Class Counsel likewise have adequately represented the Settlement Class. They have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, and including those under the VPPA. *Id.* ¶¶ 46–70. Moreover, Class Counsel dedicated significant time and personnel to the vigorous prosecution and settlement by performing such tasks as: (i) conducting an extensive factual investigation that required highly

technical knowledge and forensic investigation prior to mediation; (ii) engaging in formal and informal discovery to understand the merits of the case, likelihood of success at class certification, and Defendant's ability or inability to fund a class action settlement under Rule 23(b)(3); (iii) launching offensive first-party and third-party discovery, that included participating in several meet and confers with Epoch Times and with Meta concerning their respective discovery responses over the span of several months; (iv) participating in mediation and extensive subsequent settlement discussions (v) serving and preparing for a Rule 30(b)(6) of Epoch Times's Corporate Representative; (vi) responding to the discovery Epoch Times propounded on Plaintiff, which required working with expert consultants to forensically image Plaintiff's computer; (vii) achieving a very favorable Settlement on behalf of the Settlement Class; (viii) presenting the proposed Settlement to the Court and amending the Settlement Agreement per the Court's directive; (ix) retaining an independent expert—Serge Egelman—certified by this Court, to conduct a forensic analysis of Epoch Times's websites to ensure the remedial measures secured through the Settlement have already been implemented as Epoch Times; and (x) working with the Notice Administrator to implement and oversee the Notice Program, to monitor settlement claims. *See* Joint Decl. ¶¶ 22–32; *see also* Motion for Attorneys' Fees. In sum, Class Counsel are eminently qualified to conduct this litigation, have done so vigorously to date, and have no conflicts of interest with the Settlement Class.

### b.      The Settlement was negotiated at arm's-length.

Based partly on Defendant's statement that it could not pay a viable damages judgment under Rule 23(b)(3) and that it was willing to entertain robust business practice changes, the Parties agreed to mediate. Subsequently, Plaintiff submitted several rounds of questions from a financial analyst employed by Class Counsel concerning Defendant's financial condition, and Defendant provided its responses. Joint Decl. ¶ 25. Additionally, after initially refusing to do so, Defendant

eventually provided documents concerning its financial condition that limited its ability to fund a class action settlement to Judge Maas. *Id.*

This thoroughness and consistently adversarial posture favors approval. *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange with no depositions because "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims" and "[t]he parties' participation in a day-long mediation allowed them to further explore the claims and defenses"); *see, e.g., McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) (finding that the parties' "efficient informal exchange of information" was enough discovery to recommend settlement approval); As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is procedurally fair. *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (settlement was procedurally fair where negotiations were overseen by a neutral mediator and parties engaged in "extensive and contested" discovery beforehand); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (recognizing mediator's involvement in "settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

### 2. The Relief Provided to the Settlement Class is Adequate.

Class Counsel secured an excellent result for the Settlement Class that is substantively fair per Rule 23(e)(2)(C), which enumerates four factors to be considered when assessing whether the relief provided to the Settlement Class is adequate: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified

under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(i)–(iv); *see also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors one, four through six, eight, and nine).

### a.     <u>The Costs, Risks, and Delay of Trial and Appeal</u>

Rule 23(e)(2)(C)(i) requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Grinnell* factors one ("complexity, expense, and likely duration of the litigation") and four, five, and six (risks of establishing liability and damages and maintaining the class). *See Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV359LEKATB, 2023 WL 3251421, at *4 (N.D.N.Y. May 3, 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). The Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *8 (S.D.N.Y. Sept. 9, 2015) (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* Courts recognize that "the complexity of Plaintiff's claims ipso facto creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009).

Indeed, continued litigation would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also, e.g., Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 289 (S.D.N.Y. 2017) (same); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d at 619 (S.D.N.Y. 2012); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (settlement avoids costs associated with "inherently complex" class actions);

Moreover, had litigation continued, the Parties would likely have retained expensive forensics and other experts for class certification, summary judgment, and trial, resulting, at minimum, in protracted *Daubert* briefing. And Epoch Times has already demonstrated its

willingness to seek the Second Circuit's intervention even as to ordinary interlocutory orders, promising further expense and delay. By reaching a favorable settlement with the assistance of a neutral mediator, the Parties avoided even more significant expense and delay. *See Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Further, Plaintiff would face significant risks in establishing liability and damages if this Action were to proceed. Litigation inherently involves risks and uncertainty. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997). This is especially true here, where Plaintiff faces substantial uncertainty in applying a privacy statute originally drafted to address disclosure of VHS rental store watch lists to 21st Century Internet consumer surveillance technologies. *See Mollet v. Netflix Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (discussing history and purpose of VPPA). Moreover, Plaintiff's liability proof may involve both first- and third-party discovery (from Epoch Times and Meta, respectively). Finally, proof of actual damages would likely involve substantial exploration of how both Epoch Times and Meta use the data transmitted to Meta by the Pixel. While the VPPA provides for statutory damages, imposition of such damages on a class-wide basis is not necessarily a straightforward matter. *See, e.g.*, *Arista Records LLC v. Usenet.com Inc.*, No. 07 Civ. 8822, 2010 WL 3629587, at *4–5 (S.D.N.Y. Sept. 16, 2010) (discussing interaction of statutory damages and due process). Though Plaintiff believes in the merits of his case, settlement here avoids this significant uncertainty while ending the challenged conduct without sacrificing any Settlement Class Member's right to pursue damages.

Additionally, the risk of maintaining class status through trial in this Action is significant. The Court has not yet certified the case as a class action. Such a determination would only be

reached after additional first- and third-party discovery, and exhaustive briefing. If the Court were to determine that statutory damages could not be imposed on a classwide basis, there is a risk that individualized damages determinations would overwhelm the common issues. Additionally, even if the Court were to certify the Class (and deny efforts to decertify it thereafter), Epoch Times has shown a desire and ability to seek appellate review of this Court's interlocutory decisions, so even an initially favorable result would likely be delayed and possibly defeated by Epoch Times's Rule 23(f) petition. Finally, even if Plaintiff obtained a judgment on behalf of the Class consistent with the claimed damages, the Class would likely never recover on that judgment because Epoch Times has maintained it does not have sufficient funds to satisfy such a judgment. The Settlement Agreement eliminates these risks while providing significant relief to the Settlement Class. These factors sharply weigh in favor of preliminary approval.

### b. Effectiveness of Any Proposed Method of Distributing Relief and Any Agreement Required to Be Identified

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule 23(e)(3). Because of the nature of the remedial and injunctive relief in this Settlement, these factors are neutral. *See, e.g., Liberty Res., Inc. v. City of Philadelphia*, No. CV 19-3846, 2023 WL 3204018, at *8 n.5 (E.D. Pa. May 1, 2023).

### c. The Terms of any Proposed Award of Attorneys' Fees

As set forth in Class Counsel's motion for attorneys' fees (*see* ECF No. 92 (motion) & 93 (brief)), Class Counsel is seeking an award of $695,624.40 for a portion of their full attorneys' fees[9] and $34,375.60 in reimbursement of litigation expenses. The Settlement is not conditioned upon

---

[9] As explained in the fee brief, this award would only cover approximately 70% of Class Counsel's attorneys' fees at the time of that filing. *See* ECF No. 93 at 3, 10, 14, 19.

an award of fees. Settlement, ¶ 7.3. The motion for attorneys' fees also seeks a service award for the Class Representative of $2,500 for his efforts on behalf of the Settlement Class. The Parties addressed the issue of attorneys' fees and expenses, with the assistance of Judge Maas, only after they had reached an agreement in principle with respect to the substantive terms of the Settlement, including the proposed injunctive relief, and recognition of remedial measures. Joint Decl. ¶ 72. Indeed, the Parties have agreed to accept as final, and not appeal, any award of attorneys' fees and costs up to the $730,000.00 cap. Settlement ¶ 7.3. Class Counsel will not receive any funds until the Court has granted its fee request.

### 3. The Settlement Treats Settlement Class Members Equitably.

Finally, the Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, there is no preferential treatment for any members of the Settlement Class as the remedial and injunctive relief applies uniformly to benefit all them equally.

### 4. Defendant Lacks the Ability to Withstand a Greater Judgment Consistent with the Claimed Damages.

Under the seventh *Grinnell* factor, a court also considers "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. Courts do not require that a defendant "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (internal citation omitted).

From the beginning, Plaintiff's complaint primarily sought declaratory and injunctive relief, because it was critically important that Epoch Times cease its alleged improper use of the Pixel to invade Plaintiff's and Settlement Class Members' privacy rights. After extensive discovery and disclosure of Defendant's financial situation and lack of insurance coverage to Class Counsel, it became clear Defendant would not be able to withstand a large monetary judgement

consistent with the claimed damages or to reasonably fund a damages settlement. *See* Joint Decl. ¶ 36; Settlement ¶ 5.1.4. Through review of publicly available information and formal and informal discovery, Class Counsel estimates that the Settlement Class is comprised of multiple millions of individuals.[10] With statutory damages of $2,500, any judgment would be in the billions of dollars. Moreover, Epoch Times's representations about its finances—made in good faith and supported by documentary evidence—support the conclusion that it does not have the ability to fund a fair and reasonable damages settlement for a Class Plaintiff's Counsel estimates is comprised of millions of individuals. Joint Decl. ¶ 36. Thus, this *Grinnell* factor favors approval.

### 5.    The Reaction of the Settlement Class Supports Final Approval.

As discussed above, the fact that not a single member of the estimated multi-million-member class objected to the Settlement after being notified of it further weighs in favor of final approval. *See Grinnell*, 495 F.2d at 463 (factor two; at the final approval stage, courts consider the Settlement Class's reaction to the Settlement).

### 6.    The Settlement Satisfies the Other *Grinnell* Factors.

*Grinnell* factors eight and nine also weigh in favor of approval of the Settlement. Analyzing these factors "does not involve the use of a mathematical equation yielding a particularized sum" and instead "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The Second Circuit has noted that courts often approve settlements even where the recovery is a fraction of the amount recoverable at trial. *See Grinnell*, 495 F.2d at 455 n.2 ("There

---

[10] For example, Epoch Times's publicly-available marketing materials disclose there are 20 million unique digital users per month (*see, e.g.,* https://epochmedia.kr/TheEpochTimes_MediaKit_2021.pdf?ckattempt=2), and users are required to sign in and provide an email address in order to access content.

is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) (same).

In negotiating the Settlement Agreement, Class Counsel carefully considered the remedial measures and injunctive relief proffered to the Settlement Class Members. Joint Decl. ¶ 36, Settlement ¶¶ 2.1, 3.1. Class Counsel balanced the Settlement Agreement against possible outcomes of a trial on the merits. Joint Decl. ¶ 36. Here, even a complete victory against a Defendant incapable of satisfying a judgment consistent with the claimed damages would be, as a practical matter, only a nominal victory. *Id.* Under these circumstances, the best Settlement Class Members might be able to hope for would be remedying the past violations—by purging Epoch Times's database of any data, if any, obtained through the Pixel—and enjoining its future use of the Pixel in the manner challenged here. *Id.* The Settlement accomplishes both of those goals now, without the risks, costs, and delay described above. *Id.*

Class Counsel weighed these risks, in addition to the normal perils of litigation, in reaching the Settlement. *Id.* Class Counsel carefully considered the changes to the Defendant's business practices and agreement to refrain from unlawful practices in the future. *Id.* Where a settlement assures immediate relief to class members (in this case, immediate remedial measures and injunctive relief), and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the Settlement is reasonable. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, *5 (S.D.N.Y. Mar. 24, 2008) (internal citation omitted). Just so here. Because the Settlement Agreement provides immediate and significant relief, without the attendant risks of continued litigation, the final *Grinnell* factors favor approval.

Lastly, while not an official *Grinnell* factor, courts may also look to the scope of the release. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 42 n.41 (E.D.N.Y. 2019). Here, because this is a settlement under Rule 23(b)(2), the Released Claims expressly "***do not include claims for damages or other monetary relief.***" Settlement ¶ 1.15 (emphasis in original). Thus, the release is narrowly tailored, preserving every Settlement Class Members' right to pursue their own damages claims, and appropriate. *See Selby v. Principal Mut. Life Ins. Co.*, No. 98 CIV. 5283(RLC), 2003 WL 22772330, at *3 (S.D.N.Y. Nov. 21, 2003) (finding narrow release of class claims that allowed class members who believe they may have been injured by the alleged practice to pursue claims for monetary relief through individual or class suits weighed in favor or preliminary approval).

Consequently, the relevant factors under Rule 23(b)(2) and *Grinnell* strongly support a finding that the Court will likely be able to approve the Settlement as "fair, reasonable, and adequate."

### B.  The Court Should Confirm Settlement Class Certification.

A settlement class will be certified where the four requirements of Rule 23(a) are satisfied—numerosity, commonality, typicality and adequacy of representation—plus the requirements of any one of the sub-sections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Newberg, *supra*, at § 13:18. The certification requirements are met. For settlement purposes only, Defendant consents to certification. *See Tiro v. Public House Investments, LLC*, 2013 WL 2254551, at *3 (S.D.N.Y. May 22, 2013) ("[w]hen the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.") (citing Newberg § 11.27). The Court has preliminary certified the Class for purposes of settlement.

*See* ECF No. 91, Prelim. Approval Order. Since that time, nothing has changed that should change the Court's decision to certify the Settlement Class, and certification remains warranted.

### 1.     The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires the class be sufficiently numerous. Plaintiff must show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "[N]umerosity is presumed at … 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the Settlement Class is defined as "all individuals residing in the United States who were Facebook account holders and subscribers to Defendant's digital services during the Class Period, and who requested or obtained any videos on any Epoch Times website while an active Facebook account holder during the Class Period." Settlement ¶ 1.19. Based on the exchange of information conducted in this Action, Plaintiff's counsel estimate that the Settlement Class consists of millions of individuals, making joinder of all members of the class impractical. Joint Decl. ¶ 36. Thus, Rule 23(a)(1) is satisfied.

### 2.     Several Questions of Law and Fact Are Common to the Settlement Class.

Rule 23(a)(2) requires "questions of law or fact common to the class." This threshold is satisfied if the question is "capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350 (2011). A single common question satisfies the commonality inquiry. *Id.* at 359. "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018). Rather, Rule

23(a)(2) is a "low hurdle." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014).

There are numerous questions of law and fact common to Plaintiff and the Settlement Class Members, capable of classwide resolution, and susceptible to common proof, *e.g.*, (1) whether Epoch Times knowingly disclosed Plaintiff's and Settlement Class Members' personally identifiable information to Meta; (2) whether Epoch Times's conduct violates the VPPA; and (3) whether Epoch Times should be enjoined from disclosing Plaintiff's and Settlement Class Members' personally identifiable information. *See* Compl. ¶ 47, ECF No. 1. Rule 23(a) is satisfied.

### 3. The Class Representative's Claim Is Typical of the Settlement Class Members.

Rule 23(a)(3) requires that the representative parties' claims be typical of those of the class. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2nd Cir. 1997) (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2nd Cir. 1993). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (internal citation omitted).

Here, Epoch Times directed the same conduct, which Plaintiff alleges violates the VPPA, at Plaintiff and all Settlement Class Members. Plaintiff's claim arises from the same set of facts and the same theory of liability as the claims of the Settlement Class Members. Rule 23(a)(3) is therefore satisfied. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014)

(holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-406 (S.D.N.Y. 2015) (same).

        **4.**      **The Class Representative and Class Counsel Have Fairly and Adequately Represented the Settlement Class.**

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys.*, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (internal citation omitted).

The interests of Plaintiff and Class Counsel are not antagonistic to the Settlement Class. Plaintiff and the Settlement Class Members all (1) had subscriptions to Defendant's digital services, (2) requested or obtained video content on a website operated by Epoch Times, and (3) used Facebook during the time Meta's Pixel was active on Epoch Times's website. Therefore, Plaintiff and the Settlement Class Members all have the same interest in obtaining remedial and injunctive relief and have no other cognizable, conflicting interests. Thus, Plaintiff has fairly and adequately protect Settlement Class Members' interests.

Class Counsel are comprised of five firms, each of whom are experienced and competent in the prosecution of complex class actions, including privacy class actions such as this one. *See* Joint Decl. ¶¶ 46–70. Class Counsel are capable and committed to achieving the best result for

Plaintiff and the Settlement Class and can draw on the firms' collective years of experience to do so. *Id.*

### 5. The Settlement Class Satisfies Rule 23(b)(2).

Class certification is appropriate where the defendant "has acted or refused to act on grounds generally applicable to the class," thereby making injunctive or declaratory relief appropriate on a classwide basis. Fed. R. Civ. P. 23(b)(2). The defining characteristic of a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.

Here, Epoch Times has "engaged in the exact same conduct as to every class member"— allegedly disclosing their personally identifiable information to Meta without their consent, in violation of the VPPA. *Hilal Khalil Homaidan v. Sallie Mae, Inc.*, 2023 Bankr. LEXIS 966, at *144 (E.D.N.Y Bankr. April 11, 2023) (certifying class under Rule 23(b)(2)). Further, the remedial measures and injunctive relief in this case "sweep[] broadly enough to benefit each class member." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015) (affirming class certification under Rule 23(b)(2)). As in other cases concerning violations of individuals' statutory privacy rights, the Court should conclude that certification is appropriate pursuant to Rule 23(b)(2). *See, e.g. Diaz v. Google LLC*, No. 5:21-cv-3080, ECF No. 78 (N.D. Cal. Oct. 31, 2022) (certifying for settlement purposes Rule 23(b)(2) class in case alleging privacy violations by defendant's COVID contact tracing application); *Gaston v. LexisNexis Risk Solutions, Inc.*, 483 F. Supp. 3d 318, 342– 43 (W.D.N.C. 2020) (certifying Rule 23(b)(2) class based on defendant's disclosure of private information about class members to a third-party in violation of a federal statute); *Welch v. Theodorides-Bustle*, 273 F.R.D 692 (N.D. Fla. 2010) (same).

## C. The Notice Program Was Reasonable and Provided Due, Adequate, and Sufficient Notice to the Settlement Class.

The Notice Program approved by this Court and carried out by the Notice Administrator conforms with the procedural and substantive requirements of due process and Rule 23. *See supra*, Section IV (describing the Notice Program and the implementation thereof); Kroll Decl. The Settlement seeks injunctive relief, and Plaintiff seeks certification of the Settlement Class pursuant to Rule 23(b)(2). Accordingly, notice is discretionary, not mandatory. Fed. R. Civ. P. 23(c)(3) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class. (emphasis added)); *Dukes*, 564 U.S. at 362 ("The Rule provides no opportunity for . . . (b)(2) class members to opt out and does not even oblige the District Court to afford them notice of the action."). The key is that the notice is reasonable. *Wal-Mart Stores*, 396 F.3d at 113.

Nevertheless, as described in detail above, Kroll provided publication notice to members of the Settlement Class. *See In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 515 n.19 (S.D.N.Y. 1996) ("Notice under Rule 23(b)(2) is flexible and may consist entirely of published notice in appropriate circumstances."). The Court should conclude that the Notice Program was satisfactory in this 23(b)(2) settlement. *See Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *9 (S.D.N.Y. June 26, 2018) (approving notice program for a Rule 23(b)(2) settlement that consisted of, *inter alia*, a website and an automated toll-free hotline about the action).

## VII. CONCLUSION

For these reasons, Plaintiff respectfully requests the Court enter an order as proposed in Exhibit 1, hereto.

May 14, 2024                                   Respectfully submitted,

/s/ Andrew J. Shamis
Andrew J. Shamis (5195185)
ashamis@shamisgentile.com
Edwin E. Elliott (pro hac vice)
edwine@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299

Douglas I. Cuthbertson (pro hac vice)
dcuthbertson@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Michael W. Sobol (SBN 194857)
msobol@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Hank Bates (SBN 167688)
hbates@cbplaw.com
Lee Lowther (pro hac vice)
llowther@cbplaw.com
Courtney E. Ross (pro hac vice)
cross@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, AR 72201
(501) 312-8500
(501) 312-8505

Gary Klinger (pro hac vice)
gklinger@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878

*Attorneys for Plaintiff Lawrence Czarnionka*
*and the Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 14th day of May 2024, a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure via CM/ECF on all counsel of record.

**SHAMIS & GENTILE, P.A.**

<u>/s/ Andrew Shamis</u>
Andrew Shamis, Esq.
New York Bar No. 101754